(No. 59905.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. CURTIS MICHAEL BRADFORD, Appellant.

*Opinion filed May 24, 1985.*

494

Daniel D. Yuhas, Deputy Defender, and Karen Munoz, Assistant Defender, of the Office of the State Appellate Defender, of Springfield, for appellant.

Neil F. Hartigan, Attorney General, of Springfield, and Kathleen Alling, State's Attorney, of Mt. Vernon (Mark L. Rotert and Michael V. Accettura, Assistant Attorneys General, of counsel), for the People.

JUSTICE WARD delivered the opinion of the court:

Curtis Michael Bradford was convicted by a jury in the circuit court of Jefferson County of two counts of indecent liberties with a child (Ill. Rev. Stat. 1981, ch. 38, par. 11—4) and sentenced to two concurrent terms of six years. The appellate court, in a Rule 23 order (87 Ill. 2d R. 23), affirmed the convictions (121 Ill. App. 3d 1163), and we allowed the defendant's petition for leave to appeal under our Rule 315 (87 Ill. 2d R. 315).

Bradford, age 30, was convicted of separate acts of lewd fondling and sexual intercourse, both occurring on the night of December 6, 1981, with his girlfriend's sister Joan, who was then 13 years old. The defendant was acquitted of a third charge of lewd fondling, alleged to have occurred on December 19, with the same victim.

On occasion, Joan would stay with Faye, her sister, who was the defendant's girlfriend, and the defendant in his home. As a prosecution witness, Faye testified that on December 6 she was in bed with Bradford when Joan appeared at the bedroom door. Bradford invited Joan into bed and asked her to remove her shorts and shirt. Faye testified that Bradford began kissing and fondling her sister. Faye became angry and left to sleep the rest of the night on a downstairs couch. She returned to the bedroom the next morning and pulled Joan, who was unclothed, from the defendant's bed.

Marcia, another sister who occasionally stayed at the defendant's house, testified that she saw the defendant and Joan lying close together in bed that morning. The witness was unable to say what either was wearing as they had blankets over them.

Called as a court's witness, Joan testified that she and Faye were sleeping in the defendant's bed while he was at work because it was a cold night and the defendant's room was the only upstairs room with a radiator. She was awake around 2 a.m. when Bradford returned from work and got into bed, but she stated that Faye slept between her and the defendant. She denied that there were any sexual relations between her and the defendant. The next morning, she was wearing shorts and a shirt when Faye pulled her from bed. She testified that she was in love with the accused and planned to marry him.

Joan said that, on December 23, she gave a statement to two agents of the Illinois Department of Criminal Investigations in which she said that she engaged in sexual intercourse with the defendant on December 6. She later initialed corrections in the typed statement and signed it. She identified the statement in court, but claimed that the agents coerced her into making it.

Gary Willaredt, one of the agents who interviewed Joan and who later typed the statement for her signature, testified that no pressure had been applied on Joan. There was corroborating testimony by the agent who accompanied Willaredt when the statement was taken and also by a third agent who was present with Willaredt when the statement was signed. Willaredt testified over objection that Joan told him that, on that night, Bradford first engaged in sexual intercourse with Faye and then with her. The statement was then admitted into evidence, over the defendant's objection, for the purpose of impeaching the inconsistent testimony of Joan.

Dr. Robert Parks, who examined Joan 17 days after the alleged incident at the request of her mother, testified that he was unable to state conclusively from a pelvic examination whether Joan had ever engaged in sexual intercourse. He did recall, after examining a hospital

record he prepared while taking Joan's history, that Joan told him she had engaged in sexual intercourse on December 6. Dr. Parks also read from a second hospital record, compiled by a nurse present during the examination, which indicated that Joan told the nurse that the sexual intercourse on December 6 was with a 30-year-old man. While testifying as a court's witness, Joan was never asked if she made these statements to the doctor and nurse. Dr. Parks could not recall who was present during the examination and remembered that the nurse was there only through her signature on the record. The defendant objected to the doctor's testimony on the ground that there was no foundation for it, but the testimony was allowed for impeachment purposes.

Joan also testified as a witness for the defense. She acknowledged her conversations with the doctor and nurse, but said she never had told them the identity of the person with whom she had engaged in sexual intercourse and claimed that she had lied when she told the nurse that the man was 30 years old. On cross-examination, she admitted that, though she was lying at the time, she had been referring to the defendant in her conversation with the nurse.

The defendant took the stand and denied any sexual involvement with Joan. On the night in question, he returned from work at around 2 a.m. and found Faye and her sister in his bed. He got into bed with Faye next to him, and did not awaken until the next morning when Faye pulled Joan from the bed. He said that he was in love with Joan and intended to marry her despite her age. Sometime around December 19, Bradford said that he asked Joan's mother for permission to marry Joan.

On cross-examination, Bradford described an essay he wrote while awaiting trial that he had titled "The Crime of Love." In it he asserts his disagreement with laws which prohibit sexual activity with a child under 16

years because they are based on "arbitrary, discriminatory standards established by law denying the very possibility of a pure love developed between individuals of [different] chronological ages." On his motion, the essay was admitted into evidence.

During rebuttal testimony, Faye stated that the defendant on that night "kept on playing with her (Joan) and then he had intercourse with her."

The defendant contends here that the prosecution used Joan's prior inconsistent statements that she had relations that night with the defendant, which had been admitted for purposes of impeachment, as substantive evidence of his guilt. This was error because extrajudicial statements are not considered competent as substantive evidence of what is contained in the statement. (See *People v. Spicer* (1979), 79 Ill. 2d 173; McCormick, Evidence sec. 39, at 73 (2d ed. 1972).) He argues that, if consideration of the impeachment testimony had been limited to that purpose, the jury would have found the remaining evidence insufficient to convict him beyond a reasonable doubt.

The purpose of impeaching evidence is to destroy the credibility of a witness and not to establish the truth of the impeaching evidence. (*People v. McKee* (1968), 39 Ill. 2d 265.) It has been recognized, however, that there is danger that juries may consider impeaching evidence such as prior inconsistent statements to be evidence of the truth of the impeaching evidence. (*People v. Bailey* (1975), 60 Ill. 2d 37; *People v. Paradise* (1964), 30 Ill. 2d 381.) Consequently, "[t]his court has repeatedly disapproved prosecutorial efforts to impart substantive character to prior inconsistent statements under the guise of impeachment." *People v. Bryant* (1983), 94 Ill. 2d 514, 522. See also *People v. Bailey* (1975), 60 Ill. 2d 37; *People v. Gant* (1974), 58 Ill. 2d 178; *People v. Powell* (1973), 53 Ill. 2d 465; *People v. Collins* (1971), 49 Ill. 2d 179.

A court's witness may be impeached by a prior inconsistent statement when the witness' testimony damages the position of the impeaching party. (*People v. Weaver* (1982), 92 Ill. 2d 545, 563; see also 87 Ill. 2d R. 238.) The prosecution was not precluded here from introducing the prior inconsistent statements even though Joan had admitted making the statements. The State may choose to have the impeaching statements introduced into evidence. *People v. Williams* (1961), 22 Ill. 2d 498, *cert. denied* (1962), 369 U.S. 806, 7 L. Ed. 2d 552, 82 S. Ct. 646; 3A Wigmore, Evidence sec. 1037, at 1044 (Chadbourn rev. ed. 1970).

The prosecution attempted to impeach Joan's credibility through the statement given to the agents and by the testimony of Dr. Parks, through statements appearing in the medical reports. It is true that lengthy or repeated references to prior inconsistent statements may indicate attempts by the prosecution to give the force of substantive evidence to the statements. (*People v. Paradise* (1964), 30 Ill. 2d 381; *People v. Moses* (1957), 11 Ill. 2d 84.) Here the prosecution limited itself to a showing that Joan had previously made voluntary statements inconsistent with her trial testimony by the testimony of agent Willaredt, Dr. Parks and Joan. The prosecution did not use additional witnesses who were available, notably the other two investigative agents and the nurse, to testify to the statements. Considering that Joan made inconsistent statements on three separate occasions, the prosecution's bringing out the statements was within the limited purpose of impeaching testimony. There was no abuse of discretion by the trial court in admitting the testimony.

The testimony of Dr. Parks was admitted without a proper foundation having been laid when Joan testified (*People v. Smith* (1980), 78 Ill. 2d 298 (proper foundation for prior inconsistent statement is laid by directing attention of witness to the time, place, circumstances and

substance of the inconsistent statement to avoid unfair surprise and give witness an opportunity to explain inconsistency)). The omission, however, was harmless here, given the extent to which Joan's testimony had already been impeached through the properly admitted evidence of the statement she made to the agents. Further, Joan, in her testimony, acknowledged making the statements in her attempt to explain making them. This satisfied substantially the requirement of laying a foundation, particularly as it was within the discretion of the court to have allowed the prosecution to recall Joan to perfect the foundation. *People v. Henry* (1970), 47 Ill. 2d 312, 322; *People v. Kubat* (1983), 94 Ill. 2d 437, 496.

The defendant argues that the State treated Dr. Park's impeachment testimony as substantive evidence during closing argument. The assistant State's Attorney said:

"Dr. Parks testified and when Joan testified as the defendant's witness she stated to you in her testimony that when she did make statements to Dr. Parks and his nurse that she had sexual intercourse with a 30 year old man on December the 6th."

This and a similarly ambiguous reference to Dr. Parks' testimony made later in the argument are the prosecution's only mention of his testimony in closing argument. We are not persuaded that the State was attempting to have the jury regard Dr. Parks' testimony as substantive evidence. In any event, the jury was instructed as to the limit imposed on impeaching evidence.

This court, to reduce the risk that a jury might consider a prior inconsistent statement as independent evidence with substantive character, has held that a jury should be cautioned and properly instructed to limit its consideration of the statement to its narrow purpose. (*People v. Collins* (1971), 49 Ill. 2d 179; *People v. Tunstall* (1959), 17 Ill. 2d 160.) Here, the jury was instructed in

the language of Illinois Pattern Jury Instruction (IPI), Criminal, No. 3.11 (2d ed. 1971):

"The believability of a witness may be challenged by evidence that on some former occasion [the witness] made a statement [or] acted in a manner that was not consistent with [the witness's] testimony in this case. Evidence of this kind may be considered by you only for the purpose of deciding the weight to be given the testimony you heard from the witness in this courtroom."

Though a modification of IPI Criminal 2d No. 3.11 was requested by the defendant and refused, we consider that the instruction was sufficient to guide the jury in its deliberation and provide an adequate safeguard that the jury would not give substantive character to the impeachment testimony. See *People v. Spicer* (1979), 79 Ill. 2d 173; *People v. Krug* (1976), 38 Ill. App. 3d 383.

The defendant contends that, if all the impeachment testimony were considered for its limited purpose, the evidence remaining was insufficient to sustain, beyond a reasonable doubt, his convictions. It is the jury's responsibility to resolve any factual disputes, to assess the credibility of the witnesses, and to determine the sufficiency of the evidence for a verdict of guilt. (*People v. Yates* (1983), 98 Ill. 2d 502; *People v. Davis* (1983), 95 Ill. 2d 1.) A reviewing court will only substitute a differing judgment when the evidence is so unsatisfactory or improbable that a reasonable doubt remains as to the defendant's guilt. (*People v. Yates* (1983), 98 Ill. 2d 502; *People v. Williams* (1982), 93 Ill. 2d 309.) Faye testified that the defendant invited Joan into bed, asked her to remove her clothing and fondled her. During rebuttal, Faye said that the defendant engaged in sexual intercourse with Joan. The defendant did not make an effort to discredit, through cross-examination, Faye's account of the incident. Marcia corroborated Faye's testimony that Bradford and Joan were in bed together on the fol-

lowing morning. Both the defendant and Joan admitted to being alone in the same bed, each professed feelings of deep affection for the other, each testified to plans to marry, and Bradford, in his self-styled essay and in testimony, challenged the right of the State to prohibit his sexual involvement with Joan. On this record, no reasonable doubt of guilt remains so as to cause this court to substitute its judgment for that of the jury.

Finally, the defendant argues that his sentence was improper due to a statutory change which reduced the criminal conduct alleged from a Class 1 felony to a Class A misdemeanor. Bradford was convicted of indecent liberties with a child and sentenced under section 11—4 of the Criminal Code of 1961 (Ill. Rev. Stat. 1981, ch. 38, par. 11—4). Effective July 1, 1984, the same criminal conduct was proscribed by section 12—15, which provides:

"Sec. 12—15. Criminal Sexual Abuse.

\* \* \*

(b) The accused commits criminal sexual abuse if \*\*\* [he or she] commits an act of sexual penetration or sexual conduct with a victim who was at least 13 years of age but under 16 years of age when the act was committed \*\*\*.

(c) Sentence. Criminal sexual abuse is a Class A misdemeanor [for the first conviction] \*\*\*." (Ill. Rev. Stat., 1984 Supp., ch. 38, par. 12—15.)

Bradford was convicted, and the appellate court affirmed the conviction, prior to the effective date of the statutory change, but he contends that, because his case was on appeal in this court when section 12—15 became effective, he should be allowed to elect to be sentenced under the new provision. He cites *People v. Chupich* (1973), 53 Ill. 2d 572, in support of his position.

In *Chupich* the statute under which the defendant was convicted and sentenced was repealed by the Illinois

Controlled Substances Act (Ill. Rev. Stat. 1971, ch. 56½, par. 1100 *et seq.*). That act provided, *inter alia*, "[i]f the offense being prosecuted \*\*\* has not reached a sentencing stage *or final adjudication*, then for purposes of penalty the penalties under this Act apply if they are less than under the prior law upon which the prosecution was commenced." (Emphasis added.) (Ill. Rev. Stat. 1971, ch. 56½, par. 1601.) This court concluded that this provision clearly indicated that "the General Assembly did not intend ['An Act to revise the law in relation to the construction of the statutes'] to govern the imposition of penalties under the statutes now before us" (*People v. Chupich* (1973), 53 Ill. 2d 572, 583), and held that a final adjudication included matters pending on direct appeal. However, section 4 of "An Act to revise the law in relation to the construction of the statutes" governs here. It provides: "If any penalty, forfeiture or punishment be mitigated by any provisions of a new law, such provision may, by the consent of the party affected, \*\*\* [be] applied to *any judgment pronounced after the new law takes effect.*" (Emphasis added.) (Ill. Rev. Stat. 1983, ch. 1, par. 1103.) Judgment is defined as "an adjudication by the court that the defendant is guilty or not guilty and if the adjudication is that the defendant is guilty it includes the sentence pronounced by the court." (Ill. Rev. Stat. 1983, ch. 38, par. 102—14.) Bradford was sentenced prior to the effective date of section 12—15, and he is not eligible to elect to be sentenced under it. (See *People v. Hansen* (1963), 28 Ill. 2d 322, 341.) Neither is *People v. Jackson* (1984), 99 Ill. 2d 476, relevant because the defendant there was sentenced after the effective date of the statutory change.

For the reasons given, the judgment of the appellate court, which affirmed the circuit court, is affirmed.

*Judgment affirmed.*