THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
DERRICK WHITE, Defendant-Appellant.

First District (1st Division)   No. 1—86—1612

Opinion filed March 20, 1989.

Law Offices of Patrick A. Tuite, Ltd., of Chicago (Patrick A. Tuite and Brent D. Stratton, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., Rimas F. Cernius, and Nancy A. Donahoe, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE MANNING delivered the opinion of the court:

.The defendant, Derrick White, was charged by information with the murder of Edward Sanders, who was fatally shot on January 31, 1981, while riding as a passenger in a taxicab. Following a jury trial in the circuit court of Cook County, the defendant was found guilty of murder (Ill. Rev. Stat. 1985, ch. 38, par. 9—1) and sentenced to 27 years' imprisonment. The defendant's motions for a mistrial and a new trial were denied by the trial court, and the defendant filed this appeal.

The defendant contends in his appeal that: (1) it was reversible error for the trial court to admit the prior inconsistent statements of the defendant's former girlfriend, which were introduced under the pretext of impeachment for the sole purpose of introducing hearsay statements; (2) his constitutional right to remain silent was violated due to improper comments by the prosecutor during closing arguments; and (3) he was not proven guilty of murder beyond a reasonable doubt.

It was stipulated that, if called as a witness, Sylvia Roysner, Sanders' girlfriend, would testify that on January 30, 1981, she and Sanders purchased drugs from Spuds, Derrick, Gun and Drake Hudsell, a/k/a Binkie or Banks. Both of them became ill from the drugs, and Sanders called Drake Hudsell (Binkie), who agreed to refund their money. Sanders subsequently went looking for Binkie to get the money. Roysner would further testify that Binkie and Sanders "had argued over a previous dope deal."

Richard Holt, a taxicab driver, testified that early in the morning of January 31, 1981, he picked up Sanders on the corner of 79th and Drexel and drove him to 79th and Ingleside. Upon arrival at that location, Sanders directed Holt to blow the horn, which he did. When no one responded to the horn, Sanders directed Holt to take him to 77th and Greenwood. When they arrived at that location, Sanders asked a man sitting in a parked car if he had seen Binkie. The man responded that he had not. Sanders then directed Holt to drive to the end of the block and to return to the same location. A light blue Continental automobile driven by a female pulled behind the taxicab and parked.

Holt further testified that Derrick White came out of the building at 7747 South Greenwood, and Sanders asked White if he had seen "Banks" (Binkie). Further conversation took place between Sanders and White regarding the $80 Sanders had given to "Banks" (Binkie). Holt, noticing that White had a gun in his hand, drove away south-

bound on Greenwood. When Holt reached 79th Street, he noticed the same blue Continental automobile that he had previously seen, and he saw a gun protruding out of the passenger side window. The Continental pulled up on the left side of the taxicab, and two shots were fired from the right front window of the Continental. After the second shot was fired the Continental proceeded westbound on 79th Street. Holt drove to 79th and Cottage Grove and called the police because Sanders had been shot. Shortly thereafter, the police arrived and took Sanders to Jackson Park Hospital. Sanders subsequently died from a gunshot wound to the chest.

Holt admitted that he did not see who shot Sanders. However, on February 1, 1981, Holt viewed a lineup at 85th and Green. He said that he picked White from the lineup because White was "real light-skinned," with a little goatee and because White was the man standing on the sidewalk the previous night holding a gun. At one time in his testimony, Holt said that he saw a picture of White before the lineup, but later he testified that he saw a picture of White after the lineup.

Phillip Morris, the owner of the blue Lincoln Continental, testified that he saw Binkie and White on January 31, 1981. On that date, he was in his apartment at 7747 South Greenwood looking out of the window when he saw White standing on the sidewalk talking to someone in a cab. While this interaction was occurring, Morris testified that Binkie had gone outside, but returned through the back door, and at that time Binkie stated that Eddie was outside. Binkie then proceeded out the front door. Shortly thereafter, Morris' girlfriend, Charlotte Lillard, came into the apartment and told Morris that she had given Binkie the keys to the Continental. Approximately one hour later, Binkie called Morris and told him that he could retrieve his car on 71st and Michigan. Morris further testified that Binkie was "real light-skinned," with hair on his chin, and that Binkie's complexion was "a lot" lighter than the defendant's complexion.

Charlotte Lillard testified that when she parked the Continental on Greenwood, she saw a man on the sidewalk arguing with someone in a cab. After she had parked the car, she said, Binkie then came over to the car and told her that Morris had given him permission to use the car. Lillard testified that Binkie was alone when she gave him the keys to the car. Thereafter, he drove off in Morris' car.

Detective Lawrence Nitsche testified that he interviewed the defendant on February 1, 1981, and received an oral confession from the defendant. Detective Nitsche further testified that he was told by

the defendant that Sanders came to the defendant's apartment with a knife about an hour before the shooting and they had argued over drugs. Sanders left the apartment and returned approximately one hour later in a cab. There was some conversation between the defendant and Sanders in front of the apartment building and then Sanders left in a cab.

Detective Nitsche also testified that the defendant stated that he entered the passenger side of a Lincoln Continental driven by Drake Hudsell (Binkie), they followed the cab in which Sanders was riding and that he fired a weapon out of the window of the car in the direction of Sanders. The Lincoln Continental thereafter completed a turn and proceeded west on 79th Street. Nitsche stated that while the defendant admitted that he left the murder weapon at 6656 South Stewart, the gun was never recovered. Detective Nitsche also testified that he did not reduce the defendant's statement to writing.

Assistant State's Attorney Paula Daleo testified that she also interviewed the defendant on February 1, 1981, and she testified substantially to the same chronology of events as described by Detective Nitsche, except that the defendant stated to her that Sanders threatened him with a razor and that Morris was driving the Continental, and both Binkie and defendant got into the car. Daleo further testified that she asked the defendant for a written statement, which he refused to provide. However, Daleo did take notes of the interview, but, unfortunately, she destroyed them after writing her felony review memo.

Joan Gilbert testified that on January 31, 1981, she was the defendant's girlfriend. However, she did not see the defendant on that date, but did see him on February 1, 1981, at the police station, after police officers came to her home at 6656 South Stewart in Chicago and took her to the station for questioning. Gilbert denied making any statements to any police officers or the assistant State's Attorney at the police station.

Gilbert also testified that she was interviewed by an assistant State's Attorney and a policeman about a month before the trial. They read statements to her in a police report that she allegedly made in 1981, and she told them that she had not made those statements. She also stated that on her way to the police station the only thing she said to the police was that she "wasn't aware of anything that had happened." The State attempted to impeach Gilbert with evidence of her prior statements to the police. On redirect she further testified that an assistant State's Attorney told her that she could be charged with perjury if she did not admit to making the

1981 statement.

Detective McGuire testified that he was present when the assistant State's Attorney interviewed Gilbert, and she was not threatened with a perjury charge. McGuire further stated that Gilbert made the statements to him regarding the offense that she denied making during her testimony. However, he did admit that he was aware before trial that Gilbert had denied making the prior statements.

The State argues that the trial court properly allowed the impeachment of Gilbert with her prior inconsistent statements. Moreover, they contend that they did not know how Gilbert would testify at trial and impeached her with her prior inconsistent statements when she changed her testimony at trial. The State further contends that the defendant waived this issue since he did not raise it during the trial nor did he specify it in his motion for a new trial.

As a result of the recent decision by our supreme court in *People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124, we must agree with the State that the defendant has waived this issue, since it was not raised during the trial, nor was it specified in a written motion for a new trial. Accordingly, we do not find it necessary to pass upon the appropriateness of the admission of Gilbert's prior inconsistent statements into evidence. Nor do we find it necessary to pass upon the contention of the State regarding their lack of knowledge as to what would have been testified to at trial.

■ Our supreme court in *Enoch* reiterated that it is the general rule in Illinois that if a defendant fails to raise an alleged error in his written motion for a new trial, specifying the grounds supporting the motion, the alleged error is waived and will not be considered as being properly before the reviewing court in the absence of plain error. *People v. Enoch* (1988), 122 Ill. 2d 176, 187, 522 N.E.2d 1124; *People v. Szabo* (1986), 113 Ill. 2d 83, 93, 497 N.E.2d 995, *cert. denied* (1987), 479 U.S. 1101, 94 L. Ed. 2d 181, 107 S. Ct. 1330; *People v. Pickett* (1973), 54 Ill. 2d 280, 282, 296 N.E.2d 856.

The supreme court specifically rejected the contention that it was sufficient if the issue was raised *either* during trial *or* in the post-trial motion. The court set forth the reason for this rule as follows, quoting from *People v. Caballero*:

> "Failure to raise issues in the trial court denies that court the opportunity to grant a new trial, if warranted. This casts a needless burden of preparing and processing appeals upon appellate counsel for the defense, the prosecution, and upon the court of review. Without a post-trial motion limiting the consideration to errors considered significant, the appeal is open-

ended. Appellate counsel may comb the record for every semblance of error and raise issues on appeal whether or not trial counsel considered them of any importance." *People v. Caballero* (1984), 102 Ill. 2d 23, 31-32.

However, the supreme court held that an exception to the general rule of waiver applied where constitutional issues had been properly raised at trial, questions of the sufficiency of the evidence were raised and plain error issues were presented. For plain error to exist, it must be plainly apparent from the record that an error affecting substantial rights was committed. (*People v. Precup* (1978), 73 Ill. 2d 7, 17, 382 N.E.2d 227.) Plain error may be invoked in criminal cases where the evidence was closely balanced or the error was of such magnitude that it denied the accused a fair and impartial trial. *People v. Lucas* (1981), 88 Ill. 2d 245, 251, 430 N.E.2d 1091; *People v. Pickett* (1973), 54 Ill. 2d 280, 283, 296 N.E.2d 856.

The evidence offered by the State here included testimony that oral confessions were given by the defendant to both Assistant State's Attorney Paula Daleo and Detective Nitsche. Moreover, the defendant's confessions were corroborated by other witnesses. Therefore, the evidence of the defendant's guilt was not closely balanced. On the contrary, the evidence against the defendant was overwhelming. We have searched the record and find no evidence that the defendant was denied a fair trial. Under the facts of this case, we decline to invoke the plain error doctrine.

The defendant contends that his timely objection during the trial to the State's introduction of Gilbert's prior hearsay statements was sufficient to allow the trial judge to consider the issue and thereby satisfied the purpose of the post-trial motion rule. However, as the court in *Enoch* pointed out, an objection made by the defendant during the trial does not alter the clear mandate of the statute, which requires that an issue to be used as a basis for a motion for new trial be set forth in writing. (*People v. Enoch* (1988), 122 Ill. 2d 176, 187, 522 N.E.2d 1124.) Our supreme court held in *Enoch* that to preserve an issue for review, "*[b]oth* a trial objection *and* a written post-trial motion raising the issue are required for alleged errors that could have been raised during trial." (Emphasis in original.) 122 Ill. 2d at 186.

Since the defendant in the instant case failed to include in his written post-trial motion the issue regarding the prior inconsistent statements of the defendant's former girlfriend, and since we have determined that plain error did not occur, the defendant is now precluded from raising the issue on appeal. Furthermore, we find no

constitutional violation that would warrant reversal, nor any insufficiency in the evidence.

■■ The defendant, however, also asserts that he was prejudiced by the State's improper impeachment since the jury was not cautioned at the time of impeachment, nor was it instructed at the end of trial that the prior statements were being admitted for the limited purpose of establishing credibility and could not be considered as substantive evidence. Normally, prior inconsistent statements cannot be used as substantive evidence but may be used only for purposes of determining credibility. (*People v. Collins* (1971), 49 Ill. 2d 179, 194, 274 N.E.2d 77.) Although the legislature has recently enacted a provision which allows for the use of prior inconsistent statements as substantive evidence if certain criteria are met (Ill. Rev. Stat. 1985, ch. 38, par. 115—10.1), that provision is not applicable to the instant case and has no bearing on our decision today.

■■ ■ Moreover, a jury should be cautioned and properly instructed regarding the limitations upon the use of a prior inconsistent statement in order that they do not impart substantive character to such statements. (*People v. Bradford* (1985), 106 Ill. 2d 492, 501, 478 N.E.2d 1341; *People v. Collins* (1971), 49 Ill. 2d 179, 194, 274 N.E.2d 77.) The jury in the case at bar was provided with the Illinois Pattern Jury Instructions, Criminal, No. 3.11 (2d ed. 1981) (IPI Criminal 2d) at the end of the trial. The instruction stated:

> "The believability of a witness may be challenged by evidence that on some former occasion he made a statement that was not consistent with his testimony in this case. Evidence of this kind may be considered by you only for the purpose of deciding the weight to be given the testimony you heard from the witness in the courtroom."

Our supreme court has held that the giving of IPI Criminal 2d No. 3.11 is "sufficient to guide the jury in its deliberation and provide an adequate safeguard that the jury would not give substantive character to the impeachment testimony." (*People v. Bradford* (1985), 106 Ill. 2d 492, 502, 478 N.E.2d 1341; *People v. Spicer* (1979), 79 Ill. 2d 173, 179, 402 N.E.2d 169, *cert. denied* (1980), 446 U.S. 940, 64 L. Ed. 2d 794, 100 S. Ct. 2162.) Therefore, the defendant's contention is without merit.

The defendant next argues that his constitutional right to remain silent was violated due to improper comments by the prosecutor during closing arguments on the defendant's failure to testify. Specifically, in the rebuttal argument the assistant State's Attorney commented to the jury, "[T]here's only one person who the testimony,

which is the evidence, has shown is the shooter. It's been uncontradicted that the defendant made those statements."

The State maintains that the prosecutor's comments during closing arguments were proper comments of what the evidence had shown. The State further contends that its comments were, in any event, in response to arguments raised by the defendant during his closing argument and, thus, invited. In support of its position, the State argues that the defense counsel in his closing argument emphasized that the assistant State's Attorney and Detective Nitsche did not produce the notes of the defendant's statements. This, the State asserts, invited the comments that the defendant's statements were uncontroverted.

■ We agree with the State. The prosecutor is allowed a great deal of latitude during closing arguments. (*People v. Shum* (1987), 117 Ill. 2d 317, 341, 512 N.E.2d 1183, *cert. denied* (1988), 484 U.S. 1079, 98 L. Ed. 2d 1022, 108 S. Ct. 1060; *People v. Dominique* (1980), 86 Ill. App. 3d 794, 806, 408 N.E.2d 280.) In determining whether the defendant's right to remain silent has been violated, we must assess whether the reference was intended or calculated to direct the jury's attention to the defendant's failure to testify. *People v. Dixon* (1982), 91 Ill. 2d 346, 350, 438 N.E.2d 180; *People v. Hopkins* (1972), 52 Ill. 2d 1, 6, 284 N.E.2d 283.

■ In the instant case the prosecutor specifically commented on the uncontroverted nature of the evidence, which only served to emphasize the strength of the State's case. (*People v. Bolden* (1987), 152 Ill. App. 3d 631, 639, 504 N.E.2d 835; *People v. Bryant* (1983), 94 Ill. 2d 514, 524, 447 N.E.2d 301.) A prosecutor may comment on the uncontroverted nature of the evidence even though the defendant is the only person who could have contradicted the evidence. *People v. Hopkins* (1972), 52 Ill. 2d 1, 6, 284 N.E.2d 283; *People v. Mills* (1968), 40 Ill. 2d 4, 8-9, 237 N.E.2d 697.

The prosecutor may also properly comment on the uncontroverted nature of evidence as long as the purpose is not to call attention to the defendant's failure to testify, but rather to demonstrate the absence of any evidentiary basis for defense counsel's argument. (*People v. Dixon* (1982), 91 Ill. 2d 346, 350, 438 N.E.2d 180.) However, even if the prosecutor's comments were improper, an improper argument will not constitute reversible error unless the argument resulted in substantial prejudice to the accused. *People v. Shum* (1987), 117 Ill. 2d 317, 347, 512 N.E.2d 1183, *cert. denied* (1988), 484 U.S. 1079, 98 L. Ed. 2d 1022, 108 S. Ct. 1060; *People v. Baptist* (1979), 76 Ill. 2d 19, 29, 389 N.E.2d 1200.

■ In light of the overwhelming evidence presented during the trial, we do not find that the comments here resulted in substantial prejudice to the accused. Nor can we say that the verdict would have been different but for the prosecutor's comments. Therefore, we find no error in the prosecutor's comments.

■ The defendant finally argues that he was not proven guilty of murder beyond a reasonable doubt. It is the responsibility of the trier of fact to determine the credibility of witnesses and a reviewing court will only substitute its judgment when the evidence is so unsatisfactory or improbable that it creates a reasonable doubt of the defendant's guilt. *People v. Shum* (1987), 117 Ill. 2d 317, 356, 512 N.E.2d 1183, *cert. denied* (1988), 484 U.S. 1079, 98 L. Ed. 2d 1022, 108 S. Ct. 1060; *People v. Bradford* (1985), 106 Ill. 2d 492, 502, 478 N.E.2d 1341.

■ In the instant case, Assistant State's Attorney Paula Daleo and Detective Nitsche testified that the defendant confessed to killing Sanders, providing them with a detailed account of the killing and of the incidents that occurred before and after the killing. Portions of the defendant's confession were also corroborated by Richard Holt, the taxicab driver; Sylvia Roysner, Sanders' girlfriend; and Phillip Morris, the owner of the blue Continental. After a review of the record, we conclude that there is sufficient evidence in the record to support the jury's verdict and that the verdict was not so improbable or unsatisfactory as to raise a reasonable doubt of the defendant's guilt.

For the reasons stated, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

CAMPBELL and QUINLAN, JJ., concur.