NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 231369-U

NO. 4-23-1369

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
November 4, 2024
Carla Bender
4th District Appellate
Court, IL

| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Marshall County |
| PAUL D. CRUZ, | ) | No. 21CF5 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | James A. Mack, |
| | ) | Judge Presiding. |

JUSTICE DOHERTY delivered the judgment of the court.
Justices Harris and Zenoff concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant received ineffective assistance when his attorney introduced evidence that supplied a missing element of the State's case.

¶ 2    In this direct appeal, defendant Paul D. Cruz appeals his convictions of two counts of aggravated sexual abuse and one count of predatory criminal sexual assault of a child. He argues that defense counsel's representation fell below the constitutionally guaranteed standard of effective assistance. For the reasons that follow, we reverse and remand.

¶ 3    I. BACKGROUND

¶ 4    In February 2021, defendant was charged in a three-count information with two counts of aggravated criminal sexual abuse of a minor under the age of 13 (720 ILCS 5/11-1.60(c)(1)(i) (West 2018)) and one count of predatory criminal sexual assault of a child (*id.* § 11-1.40(a)(1)). The two sexual abuse counts alleged that defendant fondled the breasts of the

minor on top of her clothing and with skin-to-skin contact. The predatory sexual assault count was based on the allegation that defendant digitally penetrated the minor's vagina.

¶ 5 A bench trial ensued, at which the minor victim, A.C., testified, as did her mother and defendant's son. Relevant on appeal is the testimony of A.C. and the sole exhibit introduced into evidence, defendant's exhibit No. 1, a recorded interview of A.C.

¶ 6 During direct examination by the prosecution, A.C. testified that in early 2018, her mother was in a dating relationship with defendant; A.C. was 12 years old at the time. In February 2018, defendant moved into A.C.'s mother's home, along with his two children. Approximately one month after defendant moved into the home, A.C. was alone in the bedroom her mother shared with defendant, perusing her mother's closet for clothes to wear. Defendant entered the room and placed his hand underneath her shirt, on top of her breast but above her bra. There was no skin-to-skin contact during this incident, and she ran out of the room after a few minutes.

¶ 7 Approximately one week later, A.C was once again alone in her mother's bedroom, looking through the closet for clothes, when defendant entered the room and pushed A.C. onto the bed. He told A.C. that she looked like her mother. He then put his hand inside A.C.'s pants and underwear, touched her vagina, and placed his hand under her shirt and bra and touched her breast. The contact between defendant's hands and her body was skin-to-skin. That incident lasted no longer than 10 minutes and possibly not even that long, as A.C. stated it felt like the incident lasted longer "in the moment." A.C. eventually pushed defendant away and went to her bedroom. In September 2018, defendant stopped living in the home. A.C. did not report these incidents until sometime in 2021.

¶ 8 On cross-examination, defense counsel questioned A.C. about an interview that took place in 2021 after she reported the incidents described above. The interview took place at

Braveheart Children's Advocacy Center (Braveheart) and was recorded. Defense counsel and A.C. agreed that her memory of the incidents "was probably a little bit fresher in [her] mind" during the interview. At the time of the interview, A.C. was over the age of 13. Referring to the first incident, counsel stated that in the recorded interview, A.C. said that defendant put his hand up her shirt and that she pushed him away, causing him to stumble to the floor. A.C. confirmed that sounded accurate.

¶ 9        Regarding the second incident, defense counsel confirmed with A.C. her testimony on direct examination that defendant had told her she looked like her mother. Counsel then asked whether in her recorded interview A.C. had given a different answer. A.C. responded that she was not sure. The following colloquy then occurred.

> "[DEFENSE COUNSEL:] Okay. So, is it possible you said, instead of that, you're not getting away from me this time?
>
> [A.C.:] I believe that happened at a later time, him saying that at a later date on a different night.
>
> Q. Okay. But you don't believe he said that the second time?
>
> A. No.
>
> Q. All right. And then you thought there was a later date, but then you didn't testify to that later date; correct?
>
> A. Correct.
>
> Q. All right. And if it was a later date, you would have had a hammer, and you would have said you threatened that get away or I will hit you with this; correct?
>
> A. Yes.

Q. All right. So, each time your statement is that you overpowered—basically you overpowered him and got away at the end; is that correct?

A. Yes."

¶ 10        On redirect examination, A.C. clarified that there was a third incident with defendant that she discussed during her recorded interview that was not discussed during her testimony on direct examination. The incident took place in a recreational vehicle (RV) parked in the backyard of her mother's home. She was "demolishing" the inside of the vehicle when defendant touched her buttocks through her clothing and said she "wasn't going to get away from him." She responded that she "would kill him with a hammer if he tried to touch [her] again." Regarding one of the incidents that took place in her mother's bedroom, the prosecutor asked A.C. if defendant had digitally penetrated her vagina when he touched her. A.C. responded, "I'm not sure. I don't believe so, but I—I don't know."

¶ 11        Following the State's questioning on redirect examination, defense counsel moved to admit the recorded interview into evidence stating, "[T]here is some significant differences between the videotaped interview and what [A.C.] stated today, and I would like to use that—I would like to use that for impeachment." The State interjected that it agreed the recording should be introduced into evidence, with the prosecutor stating, "I was going to make the same motion, and I would also like the Court to view that." Defense counsel did not elaborate whether he was seeking to introduce the statement *only* for impeachment, *i.e.*, that it would not be considered as substantive evidence. In joining the motion to admit the recorded interview, the State did not elaborate on whether it was asking that it be considered substantively. The trial court did not state the purpose for which the recording was being admitted. Due to technical difficulties, the trial

- 4 -

judge viewed the video in chambers following consultation with counsel and defendant's agreement.

¶ 12    The recorded interview took place on November 13, 2020. Pertinent to this appeal, A.C. stated in the recorded interview that defendant would drink alcohol "all the time" and had a "fetish" for her to the point of favoring her over his own children. During the first incident, A.C. was in her mother's room on the bed when defendant put "something on TV." A.C. was "playing" on her cell phone when defendant walked up to her and started touching her and tried to take off her pants. She told him, "No," and then went upstairs. She then drew a picture of the layout of her mother's bedroom and defendant's path to her, explaining that defendant placed his hands under her shirt and tried to put his hands in her pants. Defendant's hand was on top of her bra. A.C. pulled his hand out of her shirt and said, "no," and that was when he tried to put his hand down her pants. A.C. did not allow him to put his hand down her pants, pushed him away, and ran to her bedroom. When she pushed defendant, he stumbled backwards and fell to the floor.

¶ 13    The second incident A.C. described in the recorded interview was when she was sitting on her mother's bed. Defendant approached her and stated that she "wasn't getting away this time." Defendant shoved her down onto the bed, placed his hand down A.C.'s pants, and told her to take her shirt off. His hand was inside of her underwear, and she could feel pain from his fingers being inside of her vagina. He was also touching her breasts under her bra. She didn't take her shirt off and was trying to get his hand out of her pants but he would not let her go. His hold on her eventually weakened and she pushed him away and ran upstairs to her bedroom.

¶ 14    The third incident A.C. described in the recorded interview took place in the RV. A.C. bent over while helping demolish the inside of the RV and defendant grabbed her buttocks

with both hands on the outside of her pants. A.C. had a hammer in her hand and told him to "get away" or "I will hit you with this." Defendant left the RV and went inside.

¶ 15    After the trial court finished reviewing the video, the matter was continued. When the trial resumed, defense counsel stated that he had no further questions for A.C.

¶ 16    During closing arguments, defense counsel pointed to inconsistencies in A.C.'s recorded interview and her testimony at trial. He pointed to the fact that in "the video she describes an incident in the bedroom downstairs where he clearly said you're not getting away from me this time," and during A.C.'s testimony, "she said you look like your mother, which was nowhere in the video at all." He also noted differences in the recounting of the incident inside the RV where, in the recorded interview, A.C. stated "get away from me or I will hit you with this [(referring to a hammer)]," and she testified to saying, "get away from me or I'll kill you."

¶ 17    The trial court found defendant guilty of all counts and sentenced him to concurrent terms of three and four years for the convictions of aggravated criminal sexual abuse of a child and a consecutive sentence of 10 years for the predatory criminal sexual abuse of a child conviction, for an aggregate sentence of 14 years. In finding the State had established penetration of a sex organ to sustain the predatory sexual assault of a child charge, the court relied on A.C.'s statements from the recorded interview that defendant "inserted his fingers into her vagina and caused pain."

¶ 18    This appeal followed.

¶ 19                              II. ANALYSIS

¶ 20    On appeal, defendant argues that he received ineffective assistance of counsel where defense counsel introduced evidence at trial that was otherwise inadmissible and was the only evidence that supported a required element of the predatory criminal sexual assault of a child

charge—penetration of a sex organ. Defendant advances this argument in two forms. First, he argues that counsel's performance entirely failed to subject the State's case to meaningful adversarial testing pursuant to *United States v. Cronic*, 466 U.S. 648 (1984), and therefore prejudice, as to him, is presumed. Second, and in the alternative, he asserts the traditional analysis of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984), necessitates the reversal of his convictions and a remand for a new trial. Following our review of this matter, we decline to engage in an analysis under *Cronic*. See *People v. Cherry*, 2016 IL 118728, ¶ 26 (" '*Cronic* only applies if counsel fails to contest *any* portion of the prosecution's case; if counsel mounts a partial defense, *Strickland* is the more appropriate test.' " (Emphasis in original.)) (quoting *United States v. Holman*, 314 F.3d 837, 839 n.1 (7th Cir. 2002)). Because we determine that counsel's representation in this matter does not fall into the category of "no representation at all," we review the matter under the framework of *Strickland*. *Id.* ¶ 29.

¶ 21     "The United States and Illinois Constitutions guarantee criminal defendants the right to the effective assistance of counsel." *People v. Lewis*, 2022 IL 126705, ¶ 44 (citing U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8; *Strickland*, 466 U.S. at 685-86; *People v. Albanese*, 104 Ill. 2d 504, 525-26 (1984)). "[E]ffective assistance of counsel refers to competent, not perfect, representation. *People v. Palmer*, 162 Ill. 2d 465, 476 (1994). The familiar two-part test established in *Strickland*, and adopted by Illinois (see *Albanese*, 104 Ill. 2d at 525-26) requires a defendant to show that defense counsel's assistance was objectively unreasonable under prevailing professional norms and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. See *People v. Johnson*, 2021 IL 126291, ¶ 52.

¶ 22 Decisions as to what evidence to present and what theory of defense to pursue are strategic decisions left to the discretion of trial counsel. *People v. West*, 187 Ill. 2d 418, 432 (1999); see *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003) ("[C]ounsel has wide latitude in deciding how best to represent a client."). "Matters of trial strategy are generally immune from claims of ineffective assistance of counsel." *People v. Smith*, 195 Ill. 2d 179, 188 (2000). "*Strickland* instructs that a court should 'recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.' " *People v. Brown*, 2023 IL 126852, ¶ 26 (quoting *Strickland*, 466 U.S. at 690.). Our supreme court has also admonished that "[r]eviewing courts should hesitate to second-guess counsel's strategic decisions, even where those decisions seem questionable." *People v. Manning*, 241 Ill. 2d 319, 335 (2011); see *Palmer*, 162 Ill. 2d at 479-80 ("Errors in judgment or trial strategy do not establish incompetence [citation], even if clearly wrong in retrospect [citation]." (Internal quotation marks omitted.))

¶ 23 "Because judicial scrutiny of a defense counsel's performance is highly deferential, 'a defendant must overcome the strong presumption that the challenged action or inaction of counsel was the product of sound trial strategy and not of incompetence.' " *People v. Haynes*, 192 Ill. 2d 437, 473 (2000) (quoting *People v. Coleman*, 183 Ill. 2d 366, 397 (1998)). A defendant may overcome the presumption by showing counsel's decision was "so irrational and unreasonable that no reasonable defense attorney, facing similar circumstances, would pursue such a strategy." *People v. Jones*, 2012 IL App (2d) 110346, ¶ 82; see *People v. Gardner*, 2024 IL App (4th) 230443, ¶ 39 (pet. for leave to appeal pending, No. 131009 (filed Aug. 29, 2024)) (quoting *People v. Watson*, 2012 IL App (2d) 091328, ¶ 24); see also *People v. Dupree*, 2014 IL App (1st) 111872, ¶ 51 (finding counsel ineffective for engaging in trial strategy that opened the door to the admission

of prejudicial evidence, failing to object to the admission of that evidence on a substantive basis, and failing to request a limiting instruction); *People v. Phillips*, 227 Ill. App. 3d 581, 590 (1992) (finding counsel was ineffective for eliciting hearsay testimony on cross-examination that if introduced by the State, would have been reversible error and was prejudicial to the defendant). "In evaluating an attorney's performance for purposes of an ineffective assistance of counsel claim, that performance must be evaluated from counsel's perspective at the time the contested action was taken." *People v. Webb*, 2023 IL 128957, ¶ 22; see *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). Our review of a claim of ineffective assistance of counsel is *de novo*. *Webb*, 2023 IL 128957, ¶ 23.

¶ 24     In this case, the State chose to charge defendant with predatory criminal sexual assault of a child based on the sexual penetration of a sex organ of the victim. 720 ILCS 5/11-1.40(a)(1) (West 2020). Caselaw has interpreted penetration in this context to require evidence beyond " '[m]ere touching or rubbing of a victim's sex organ *** with a hand.' " *People v. Maggette*, 195 Ill. 2d 336, 352 (2001) (quoting *People v. Maggette*, 311 Ill. App. 3d 388, 397 (2000)). Instead, intrusion into or penetration of the sex organ is required.

¶ 25     At issue in this appeal is whether the introduction of the recorded interview of A.C. can support defendant's assertion of ineffective assistance of counsel. Defendant argues, absent the inadmissible interview, the testimony from A.C. supporting the element of penetration was "vague" at best. The State does not respond to the assertion that the recorded interview was inadmissible; instead, it claims that it was sound trial strategy for defense counsel to try to impeach A.C.'s testimony with her prior out-of-court statements. Our review of the applicable law confirms that defendant is likely correct in his assertion that the recorded interview was inadmissible and that the State could not have successfully sought its introduction as substantive evidence.

¶ 26 Section 115-10(a)(1)-(2) of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-10(a)(1)-(2) (West 2022)) allows for the introduction of testimony of a victim regarding (1) an out-of-court statement made that indicated a report of the complained of act to another person or (2) the out-of-court statement complaining of the act or any matter or detail that is an element of the charged offense. However, to be admissible as substantive evidence under the statute, the out-of-court statement must have occurred "before the victim attained 13 years of age or within 3 months after the commission of the offense, whichever occurs later." *Id.* § 115-10(b)(3). Here, the offense occurred when the victim was 12; the recorded interview at Braveheart was conducted when the victim was 15. Further, the offenses are alleged to have occurred almost three years prior to the recorded interview. On its face, the recording does not satisfy the criteria to be admitted under the statute. Therefore, under the statute, the recorded interview was inadmissible as substantive evidence.

¶ 27 We next consider whether counsel's performance fell below an objective standard of reasonableness by introducing inadmissible evidence without clearly specifying whether it was for only limited purposes and which the trial court subsequently relied on to cure a deficiency in the State's case.

¶ 28 Prior to the State resting, and aside from the recorded interview offered into evidence by defendant, the only evidence on the topic of digital penetration was A.C.'s in-court testimony that she did not believe defendant had penetrated her vagina but ultimately was not sure. Defense counsel tendered the recorded statement immediately after A.C.'s testimony in open court. The recorded statement, if considered substantively, served to establish the missing element of the most serious offense defendant faced. As noted above, counsel failed to clarify whether he was seeking admission of the recording for only a limited purpose, and the trial court similarly failed

to clarify how it was being received. It is clear that defense counsel's strategy was to impugn A.C.'s credibility by establishing inconsistency between her testimony and her statements in the recorded interview. However, these inconsistencies amounted to relatively minor matters: the difference between whether defendant stated A.C. looked like her mother; during which encounter defendant stated A.C. would not get away from him; and the exact words A.C. used to threaten defendant with a hammer. The descriptions of the physical contact during those incidents were largely consistent, except for the description of digital penetration. Further, defense counsel had already established at the beginning of cross-examination that A.C.'s explanation of the incidents in the interview was more likely to be accurate than her in-court testimony.

¶ 29    Impeachment of the State's main witness is a common and reasonable trial strategy, but it cannot come at the cost of propping up a missing element of the State's case. Despite all the indulgence afforded to defense counsel on matters of trial strategy, this strategic tradeoff is so far beyond the pale that it cannot constitute effective representation.

¶ 30    Disagreeing with our conclusion, the State cites *People v. Hernandez-Chirinos*, 2024 IL App (2d) 230125, ¶ 84, for the proposition that "[a] mistake in trial strategy or error in defense counsel's judgment, without more, will not render counsel's representation ineffective." The attorney in *Hernandez-Chirinos* decided not to put forth evidence that might have been helpful to the defense because it might also make the jury more sympathetic to the victim. *Id.* ¶ 85. This is a classic and reasonable exercise of counsel's strategic judgment. It is not at all uncommon for evidence to bring with it both advantages and disadvantages from the defense perspective, and counsel must have the latitude to decide, strategically, when the balance favors introduction of evidence.

¶ 31    The decision facing counsel in this case was not remotely like the one in *Hernandez-Chirinos*. As described above, we have concluded that the introduction of the recorded interview that served as the only evidence supporting an element of the most serious offense defendant faced was an unreasonable strategy. What is more, it is unlikely that the State could have successfully sought introduction of the interview recording, as it failed to meet the requirements of the otherwise applicable statute. There is no "strategy" pursuant to which the marginal utility of impeachment evidence can outweigh the damage done by seeking introduction of evidence the State cannot, at least where that evidence serves as the only evidence to prove an essential element of the most serious charge against defendant.

¶ 32    Accordingly, we find that counsel's strategy to use the recorded interview to impeach A.C. was so irrational and unreasonable that no reasonable defense attorney facing similar circumstances would pursue such a strategy.

¶ 33    We turn next to the prejudice prong of the *Strickland* analysis. "To establish prejudice, a defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *Johnson*, 2021 IL 126291, ¶ 52. "A reasonable probability that, but for counsel's errors, the result of the proceeding would have been different is a 'probability sufficient to undermine confidence in the outcome.' " *Id.* ¶ 54 (quoting *Strickland*, 466 U.S. at 694). Where a defendant challenges a conviction, the question becomes "whether there is a reasonable probability that, absent counsel's errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.*

¶ 34    The trial court explicitly relied on A.C.'s recorded interview when finding that the State had proven the penetration element necessary to find defendant guilty of predatory criminal sexual assault of a child. Absent admission of the recorded interview that served as the basis for

this finding, there is a reasonable probability that the court would have harbored a reasonable doubt as to defendant's guilt on this charge, as the remaining evidence on this point was insufficient.

¶ 35 The State argues that even without the recorded interview, there was enough evidence for a reasonable trier of fact to conclude that defendant digitally penetrated the victim. We disagree. First, the question in the present context is not whether there was *sufficient* evidence to prove the issue of penetration. As noted above, the issue here is "whether there is a reasonable probability that, absent counsel's errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* Where the factfinder—here, the trial court—has explicitly relied on the evidence in question in finding the necessary element of penetration has been proven, there is clearly a "reasonable probability" (*id.*) that it would not have found defendant guilty of the charge in question without such evidence.

¶ 36 Second, we note that, without the recorded interview, the only evidence on the issue of penetration was the victim's testimony that she did not believe it had occurred or, at best, did not know whether it had. The State's reliance on the testimony that defendant touched the victim's vagina to establish an inference of penetration is inadequate. "If an alleged inference does not have a chain of factual evidentiary antecedents, then within the purview of the law it is not a reasonable inference but is instead mere speculation." *People v. Davis*, 278 Ill. App. 3d 532, 540 (1996). Further, as described above, our supreme court has already stated that contact is not enough to show penetration. *Maggette*, 195 Ill. 2d at 352. In this case, concluding that defendant engaged in the required conduct absent the recorded testimony would have required the trier of fact to ignore the victim's testimony to the contrary, and there was no other evidence to show its existence.

¶ 37 Accordingly, defendant has satisfied the two prongs of the *Strickland* analysis and therefore received ineffective assistance of counsel. Defendant does not challenge the sufficiency

of the evidence at trial, nor does he invoke double jeopardy; he simply asks for a new trial. We are bound, however, to consider the sufficiency of the evidence against defendant where a retrial raises double jeopardy concerns. *People v. Lopez*, 229 Ill. 2d 322, 366-67 (2008).

¶ 38    Although defendant has not argued that the evidence in question was admitted solely for the purpose of "impeachment" and could not be considered as substantive evidence, it appears that the trial court admitted the recorded interview as substantive evidence and allowed it to establish an element of an offense. See *People v. Bradford*, 106 Ill. 2d 492, 499 (1985) ("The purpose of impeaching evidence is to destroy the credibility of a witness and not to establish the truth of the impeaching evidence."); Ill. R. Evid. 105 (eff. Jan. 1, 2011) ("[T]he court, upon request, shall restrict the evidence to its proper purpose or scope and instruct the jury accordingly."). Nonetheless, our review of the evidence presented at the original trial does not foreclose retrial, and, therefore, defendant is entitled to a new trial. See *People v. Drake*, 2019 IL 123734, ¶ 21 ("Retrial is the proper remedy if the evidence presented at the initial trial, including any improperly admitted evidence, was sufficient to sustain the conviction."); *Lockhart v. Nelson*, 488 U.S. 33, 40 (1988).

¶ 39                        III. CONCLUSION

¶ 40    For the reasons stated, we reverse the trial court's judgment and remand for further proceedings.

¶ 41    Reversed and remanded.