THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LANCE NORRIS, Defendant-Appellant.

(No. 55894;

First District—November 22, 1972.

James J. Doherty, Public Defender, of Chicago, (Shelvin Singer, Assistant Public Defender, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Elmer C. Kissane and Frederich Chaimson, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE DRUCKER delivered the opinion of the court:

Defendant, Lance Norris, was indicted on two counts of attempted murder and three counts of armed robbery. He was convicted after a jury trial on the three counts of armed robbery and sentenced to a term of 10 to 17 years. The court directed a verdict in favor of the defendant on the two counts of attempted murder at the close of the State's case.

The two related issues raised by defendant on appeal are (1) whether the court erred in failing to require that the State directly furnish him with certain police reports of investigating officers which allegedly contained substantially verbatim descriptions of the assailant as given by the three State's eyewitnesses, or (2) in the alternative, whether the reports should have been tendered to the trial judge for an *in camera* examination to determine whether they contained substantially verbatim statements of the three eyewitnesses.

In addition to addressing itself to the merits of defendant's contentions, the State argues that defendant is foreclosed from raising these related issues on appeal because they were not raised in his written motion for a new trial.

The relevant facts follow:

On January 13, 1970, at about 8:15 A.M., Mrs. Laura Sampson parked her car in the parking lot across from her place of work at 815 North Franklin Street in Chicago. Moments later Mrs. Mary Turner, a co-worker, arrived and parked her car in front of Mrs. Sampson's car. Mrs. Turner joined Mrs. Sampson in the latter's car. Then Susan Simmons, another co-worker, arrived and parked her car in front of Mrs. Turner's car. As Mrs. Simmons got out of her car a man came up to her, put his arm around her neck and placed a gun to her head. He directed her to Mrs. Sampson's car (which was a two door model) and shot a hole through the side rear window on the driver's side. The door was opened, Mrs. Simmons was pushed into the back seat and the assailant got into the front seat and proceeded to search the three women for valuables. He took various items from them (watches and wallets) and then walked back to Mrs. Simmons' car and picked up her purse which she had dropped when first grabbed. All three women made positive out of court

photographic identifications and in court identifications of the defendant as the assailant.

Mrs. Sampson testified that she did not get a good look at defendant as he approached her car but that she was "face to face" with him while he searched her; the defendant was in the car for two or three minutes. She also had a good opportunity to observe him when he left the car. She described the defendant as wearing "a plaid hat, I call it a Robin Hood, up in the back, down in the front, little feathers on the side and sort of grayish colored plaid." On cross-examination she testified that she told an investigating police officer that the assailant was about five feet nine inches, had a fair complexion, weighed 149 pounds and wore the hat described above. Defense counsel asked that the investigating police officer's report be given directly to him for impeachment purposes or agreed that it be given to the trial judge for an *in camera* examination. He argued that he was presently entitled to the report and that the State could not withhold favorable evidence, citing *Brady v. Maryland,* 373 U.S. 83. The Assistant State's Attorney stated that the requested report contained a "composite" of what the three eyewitnesses told the officer. The court denied defense counsel's request for production and did not hold an *in camera* hearing.

Mrs. Sampson saw the defendant one week later on the morning of January 20 at the same location as the robbery. She lost sight of defendant but saw him five minutes later standing about two feet from her car; he stood there for two or three minutes. She saw him shortly thereafter for a third time (still on the same day) when Mrs. Mary Turner drove up in her car; the defendant ran after Mrs. Turner's car; Mrs. Turner drove away and Mrs. Sampson followed her and again saw the defendant's face.

Mrs. Mary Turner testified that the defendant was in Mrs. Sampson's car on January 13, 1970, for about five to ten minutes; she stated the time was two or three minutes in her Grand Jury testimony. She had a good opportunity to observe the defendant's face at various moments during the robbery. She saw the defendant again on January 20 near the location of the robbery as she was driving to work. He was standing on the curb to the east of her as she drove past him heading north. She had given a description of the assailant to an investigating officer to the effect that at the time of the robbery he wore a corduroy jacket, was five feet seven inches, skinny and had light brownish skin color. She was not questioned as to which officer she gave this description.

Mrs. Susan Simmons first saw the defendant's profile (for a second) when he shot a hole in Mrs. Sampson's car. She also saw his profile as he searched the two women in the front seat and saw his full face when he

searched her. At trial Mrs. Simmons testified that defendant was in the car for at least one minute, "as long as it takes to search three people." Before the Grand Jury she testified that defendant was in the car for "maybe 20 seconds * * * you can imagine how much time it would take to search * * *." She further testified that she gave an investigating officer (on January 13) a description of the assailant; "It was a tall man, taller than I am, if I remember. * * * I imagine he was five, ten, * * *, or five, nine, * * *, he had a gray Robin Hood style hat."

Police Officer Alexander Nere testified for the State. He and his partner, Leonard Muscolino, investigated this robbery. On January 20 he showed about six photographs to Mrs. Turner and Mrs. Simmons; both women identified the defendant as the assailant.

During cross-examination defense counsel requested that he be furnished with a report Officer Muscolino had made, but the court ruled that cross-examination should continue without the production of the report. Nere then testified that he saw the "original case report" on January 14, the day after the robbery; that this report described the assailant as a "Male Negro, approximately 19 to 20 years old, five, ten and 145 pounds, black hair, brown eyes, light complexion, medium build; that the assailant wore a Robin Hood type cap * * * [and] a tan-colored corduroy, three-quarter length jacket, with dark pants."

A hearing was held outside the presence of the jury wherein defense counsel again asked that he be furnished with Muscolino's report and the "original case report" (which was made by a beat officer whose name was unknown to Officer Nere). The State objected on the basis that Officer Nere did not write either of the reports; that the reports were hearsay and should be excluded from the record. Defense counsel requested that the court hold an *in camera* examination concerning the reports but the request was denied.

On re-direct examination Nere testified that Muscolino was presently off duty and in Wisconsin.

No witnessses testified for the defendant nor did he testify in his own behalf.

*Opinion*

The State contends that the defendant waived the right to raise the issue he presents for review because he failed to include it in his written motion for a new trial. The record discloses that defendant's trial attorney was a Public Defender and that his written motion for a new trial was apparently a form motion used by his office. Various issues raised by the form motion not applicable to defendant's case were crossed out. During oral argument on the motion the Public Defender did raise the

issue presented for review. Arguments were heard on the issue after which the motion for a new trial was denied. The trial judge indicated that he felt the police reports in issue could be included in the record on appeal.*

■■ The general rule is that all issues not raised in a written motion for a new trial are waived for purposes of appeal. As noted in *People v. Irwin*, 32 Ill.2d 441, 443, 207 N.E.2d 76, the rationale behind this rule is to obviate the necessity to appeal the case should the court rule favorably on the issue raised in the motion or to give a court of review the benefit of the trial judge's reasoning should he rule unfavorably to the defendant. Both of these purposes were served in the instant case when defense counsel orally presented the issue at the hearing on the motion for a new trial and arguments were heard regarding thereto. The "waiver principle" is not an ironclad rule and is relaxed where fundamental fairness requires it. (*People v. Hamby*, 32 Ill.2d 291, 205 N.E.2d 456.) We believe the issue was preserved for purposes of review.

We now turn to the merits of the case.

The first police report brought to the attention of the trial court was the one mentioned during cross-examination of Laura Sampson. Defendant requested its production. It is unclear as to whom she gave the description or whether the description was written down in a substantially verbatim manner in the report. But the Assistant State's Attorney during a hearing outside the presence of the jury stated that the report contained a "composite" of what the three State eyewitnesses had told the investigating officer.

■■ We agree with the State's contention that a defendant is not entitled to a report that contains only a composite description of what several witnesses told a police officer. See *People v. Durso*, 40 Ill.2d 242, 239 N.E.2d 842; see also *United States v. Palermo*, 258 F.2d 397, 399, aff'd 360 U.S. 343.

■■ However, defendant urges that since he had not seen the report he was entitled to a hearing to determine whether or not the report contained a substantially verbatim statement of the witness. As stated in *People v. Green*, 133 Ill.App.2d 244, 272 N.E.2d 721, 723:

> "The defense is entitled to the production of substantially verbatim statements by witnesses for impeachment purposes where 'no privilege exists, and where the relevancy and competency of a statement or report has been established.' (*People v. Wolff*, 19 Ill.2d 318, 327, 167 N.E.2d 201.) This rule includes the use for impeachment purposes, of statements made by witnesses as re-

---

* They are not included in the record.

corded in police reports, * * *. *People v. Moses*, 11 Ill.2d 84, 88-89, 142 N.E.2d 1."

We agree with defendant that after he requested production of the report the court should have held an *in camera* examination to determine if the report was producible under the guidelines set forth in *Green, supra.* See *People v. Wright*, 30 Ill.2d 519, 198 N.E.2d 316; *U.S. v. Campbell*, 365 U.S. 85. See Ill. Rev. Stat., ch. 110A, par. 412 (a)(i) (effective October 1, 1971).

The second report brought to the trial court's attention was the "original case report" that Officer Nere described during his cross-examination. The report apparently did contain a description of the assailant since Nere gave a detailed itemization of the physical characteristics the report contained. We have no idea whether this "original case report" contained substantially verbatim statements of any of the eyewitnesses. Unfortunately, both "the original case report" and the report discussed, *supra*, were not placed in the record on appeal despite the trial judge's intimation during a colloquy with counsel that this could be done. Nevertheless, defense counsel did ask for the direct production of the report or in the alternative an *in camera* examination, but his request was denied.

The State relies on *People v. Dennis*, 47 Ill.2d 120, 265 N.E.2d 385, in support of its position that defendant failed to lay a proper foundation for the production of the reports. However, in *Dennis* the defendant failed to do what was done here, that is, suggest that the court hold an *in camera* hearing to determine if the report contained substantially verbatim statements. See also *People v. Battle*, 3 Ill.App.3d 820, 279 N.E.2d 165.

■■ We feel that this case may be properly disposed of by vacating the judgment of conviction and remanding the case to the trial court with directions that the court hold an *in camera* examination of the police reports in question. During this examination the court shall determine: (1) whether any of the reports contains substantially verbatim statements; (2) if so, whether the statements were impeaching in character; and (3) if so, whether the failure to produce said statement(s), in light of the other evidence presented against the defendant, was not harmless error beyond a reasonable doubt. (See *Chapman v. California*, 386 U.S. 18.) If the answer to any of the above questions is "no," the court should make a specific finding of fact to that effect and re-enter the judgment of conviction. (See *People v. Wright, supra*, at 533.) If the answers to all of the questions are "yes," the cause should be set for a new trial.

Judgment vacated and cause remanded with directions.

LORENZ, P. J., and ENGLISH, J., concur.