THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
MARVIN JONES, Defendant-Appellant.

First District (3rd Division)   No. 83—0262

Opinion filed July 13, 1988.—Rehearing denied August 10, 1988.

Steven Clark and Patricia Unsinn, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Inge Fryklund, James E. Fitzgerald, and Jean T. McGuire Quinn, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE WHITE delivered the opinion of the court:

A jury found defendant Marvin Jones guilty of murder, robbery, burglary, and home invasion. The court sentenced defendant to 40 years' imprisonment and defendant appeals.

In the jury selection process, the trial court allowed the State and the defense 20 peremptory challenges each. After the State exercised its twentieth challenge, defense counsel objected and asked for a mistrial on grounds that the State had used its challenges in a racially discriminatory manner. Defense counsel pointed out that the State had used 16 of its 26 challenges to exclude blacks from the jury, and coun-

sel named 14 of the excluded blacks on the record. At that point, nine members of the jury had been selected, and three of those persons were black. The record does not reflect the races of the three persons chosen to serve on the jury after the State had exhausted its peremptory challenges.

At trial Walter White testified that in December 1981, he lived in the hall of an apartment, and Estelle Brown, Lucille White, and James Freeman lived in bedrooms adjoining that hall. On December 27, 1981, around 11:30 p.m., defendant came to the door of the apartment. Walter knew defendant from his previous visits, so he let him in and took him to Lucille's room. Lucille, who was about 75 years old, said she did not want to talk to defendant, so defendant left. Around midnight John Walker came to the apartment. Walter let him in and knocked on Lucille's door. Lucille talked with John for 20 minutes, and then she went back to her room. John stayed in the hall talking with Walter. They heard the sounds of something falling over in Lucille's room, but John said, "Pay it no attention." John continued talking with Walter until they heard someone calling John from outside. John left.

Estelle Brown testified that she also saw defendant at the door of Lucille's room at 11:30 p.m. on December 27, 1981. Lucille said to defendant: "Get away from my door; I'm going to call the police." About an hour later she saw Lucille talking with John, and after he left Lucille's door Estelle heard a cry of anger from Lucille's room. Later she heard someone outside say, "Come on, man, let's go."

Officer John Kulik testified that he received a call around noon on December 28, 1981, and in response he went to Lucille's apartment. He knocked on the door to Lucille's room but he received no answer. He went outside and noticed that the window of Lucille's room was open and its screen was torn. He helped another man enter the apartment through the window, and that man opened the door to the room. Inside Kulik found the body of Lucille, who had been strangled to death. The room had been ransacked.

Stephanie Strickland testified that in December 1981, she was living with her boyfriend, John Walker. Defendant visited them that evening, and the three of them talked and drank liquor for a while. Defendant and John left, and defendant returned first. He said that they had been to Lucille's home, and they got $50 from her. John came home about 35 minutes after defendant returned.

John Walker testified that when he left his apartment with defendant they went over to Lucille's apartment, and John agreed to talk to Lucille while defendant went into her room through her window to get

some money. John talked with Lucille for about 10 minutes and then he talked with Walter until he heard defendant say "Come on. Let's go." Defendant gave John a $50 bill and John spent the money on drugs and liquor. Police arrested John on December 31, 1981, and he gave them a statement at that time. John also testified that the State's Attorney offered to charge John with only robbery and burglary, for a sentence of four years' imprisonment, if he agreed to testify against defendant. He discussed this deal with his attorney on November 16, 1982. John admitted that he was willing to do anything he could to avoid a conviction for murder.

Defendant testified that he went to see Lucille on the evening of December 27, 1981, but she was angry with him and she asked him to leave. He went to visit John and Stephanie and he stayed in their apartment with Stephanie while John went out to get some liquor and drugs. John returned 45 minutes later. Defendant slept in John's apartment that night. He stayed with his girlfriend the next night, and then he spent a week with his ex-wife and the following week with his family in Gary, Indiana. He moved to Texas to look for work, and after he had been working there for three months, he learned that Lucille was dead when police arrested him for her murder.

In rebuttal of defendant's closing argument, the prosecutor stated:

"Well, you already know that on December 31st, Johnny Walker told the police what had occurred and what he knew about December 28, 1981, eleven months before he was ever offered any deal for his testimony.

[Defense Counsel]: Objection, Judge, no testimony as to when he was first offered any.

THE COURT: Overruled.

[Prosecutor]: Johnny Walker, December 16, 1982, when I approached him in return for his testimony, offered to plead guilty to the charges of robbery and burglary for four years. *** That offer was not made for him to come in and create something.
***

I approached Mr. Walker to testify for me, because I knew what he would testify to. He had previously told—

[Defense Counsel]: Objection as to what he knew.

[Prosecutor]: —the police and the State's Attorney's Office—

THE COURT: Overruled.

[Prosecutor]: —at the time when there was no offer made to him, he implicated himself."

■ On appeal defendant contends that the trial court committed reversible error when it overruled defendant's objections to the prose-

cutor's unsworn testimony. The State argues that defendant waived this issue when he failed to raise it in his post-trial motion. "The general rule is that the failure by a defendant to raise an issue in the written motion [for a new trial] constitutes a waiver and the issue cannot be urged as a ground for reversal on review." (*People v. Precup* (1978), 73 Ill. 2d 7, 16, 382 N.E.2d 227.) However, "[w]aiver may be avoided, under limited circumstances, where by means other than the post-trial motion a claim of error has been clearly presented to the trial court." (*People v. Lenninger* (1980), 88 Ill. App. 3d 801, 804-05, 410 N.E.2d 1157.) In *People v. Jones* (1979), 81 Ill. 2d 1, 405 N.E.2d 343, defendant objected at trial to jury instructions, but he failed to raise the issue in his post-trial motion. (81 Ill. 2d at 7.) Our supreme court rejected the State's contention that the argument had been waived. (81 Ill. 2d at 9.) Similarly, we hold that defendant herein has adequately preserved for review his objections to the prosecutor's closing argument.

The prosecutor stated to the jury that he first offered John Walker leniency in exchange for testimony against defendant in December 1982. John testified that he discussed this arrangement with his attorney in November 1982, but he gave no testimony regarding when the State's Attorney first offered the deal. The prosecutor further told the jury that he knew what John had told the police, and he knew that John would repeat that testimony at trial. The prosecutor did not attempt to put John's statement into evidence at trial. The prosecutor essentially testified that he knew that John gave his original statement to the police before the prosecutor offered him leniency and that statement was consistent with his trial testimony.

■ The prosecutor must restrict his argument to the evidence presented in the case (*People v. Burke* (1985), 136 Ill. App. 3d 593, 604, 483 N.E.2d 674), and "[i]t is improper for a prosecutor *** to get before the jury that which amounts to his own testimony" (*People v. Rothe* (1934), 358 Ill. 52, 56, 192 N.E. 777). Furthermore, it is error for the prosecutor to argue the content of a written statement whose contents have not been disclosed to the jury. *People v. Kilzer* (1978), 59 Ill. App. 3d 669, 674, 375 N.E.2d 1011.

■ In the case at bar the prosecutor improperly argued that John's prior statement must have been consistent with his trial testimony based on the prosecutor's personal knowledge of the content of the prior statement. The trial court erred when it overruled defendant's prompt objection to this argument. In *People v. Robinson* (1984), 125 Ill. App. 3d 1077, 467 N.E.2d 291, the prosecutor argued that its key witness must have presented the same testimony at the preliminary hearing as he presented at trial, because defense counsel would

have brought out any inconsistencies. The appellate court held that this argument was improper because it was based on facts not in evidence. (125 Ill. App. 3d at 1081.) Although the court found that the error was not reversible (125 Ill. App. 3d at 1082), its comments on the issue bear repeating here:

> "This court deals regularly with issues regarding improper and prejudicial prosecutorial comments and the frequency with which such conduct occurs is disturbing. Apparently, some prosecutors have not heeded the warnings of this court and persist in engaging in whatever conduct they believe will assure convictions. However, the manner in which a case is tried is as important as the outcome of the trial. Disparaging remarks and improper arguments only serve to disgrace the attorney making the remarks, tarnish the reputation of the office, and increase the possibility of reversal." 125 Ill. App. 3d at 1081-82.

The error in the case *sub judice* requires reversal if "there are reasonable grounds for believing the jury was prejudiced by the improper remarks." (*People v. Whitlow* (1982), 89 Ill. 2d 322, 341, 433 N.E.2d 629, *cert. denied sub nom. Gibson v. Illinois* (1982), 459 U.S. 830, 74 L. Ed. 2d 68, 103 S. Ct. 68.) There was only one witness who saw defendant near Lucille's room around the time of the murder, and that was John Walker, who had been charged with the murder. John was also the only witness who testified that defendant decided to steal from Lucille. John's testimony was, therefore, crucial to the State's case, and the prospects for a conviction hinged on his credibility. The prosecutor's unsworn testimony provided substantial support for the credibility of John's testimony, since the prosecutor testified that John had made a prior consistent statement. In these circumstances we find that there are reasonable grounds for believing that the jury was swayed by the prosecutor's improper remarks in closing argument. Therefore, we hold that this case must be reversed and remanded for retrial. Defendant raises several other grounds for retrial, including the prosecutor's racially discriminatory use of its peremptory challenges. However, since these issues are unlikely to arise at trial on remand, we do not address them here.

Reversed and remanded.

McNAMARA and RIZZI, JJ., concur.