**UNITED STATES of America ex rel. Derrick WHITE, Petitioner,**

**v.**

**Michael P. LANE and Neil F. Hartigan, Respondents.**

**No. 89 C 9056.**

United States District Court,
N.D. Illinois, E.D.

Feb. 21, 1992.

Derrick White, pro se.

Patrick Alan Tuite, Patrick A. Tuite, Ltd., Chicago, Ill., for Derrick White.

Terence Madsen, Illinois Atty. General's Office, Chicago, Ill., for respondents.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

Petitioner, Derrick White, is currently serving a 27 year sentence for murder. He was convicted of the murder of Edward Sanders who was fatally shot on January 31, 1981, while riding as a passenger in a taxicab. White seeks habeas corpus relief under 28 U.S.C. § 2254 and petitions the court to review the constitutionality of his conviction.

### Background

Following a 1986 jury trial in the circuit court of Cook County, Illinois, White was found guilty of murder. His motions for a mistrial and a new trial were denied by the trial court.

White then appealed to the Illinois Appellate Court. In his appeal, White made three arguments in favor of reversal. First, White argued that it was reversible error for the trial court to have admitted the prior inconsistent statements of his former girlfriend (Joan Gilbert). According to White, the State called Gilbert as a witness only to introduce prior hearsay statements under the pretense of impeachment. Second, White argued that the prosecutor made an impermissible allusion to White's failure to testify. Finally, White argued on appeal that he was not proven guilty of murder beyond a reasonable doubt.

The Illinois Appellate Court for the First Division reversed and remanded to the trial court for a new trial on the grounds that the trial court had committed reversible error by admitting the prior inconsistent statements of Joan Gilbert. Before reaching the issue, the Court first had to grapple with the State's argument that White had waived this issue by his failure to raise it in his motion for a new trial. White claimed that by making a timely objection at trial, he preserved the issue for appeal.

The Illinois Appellate Court agreed with White that he successfully preserved the issue on appeal. It wrote:

The general rule is that if a defendant fails to raise an alleged error in his writ-

ten motion for a new trial, the alleged error is waived and will not be considered as being properly before the court for review. (*People v. Picket* [Pickett] (1973), 54 Ill.2d 280, 283, 296 N.E.2d 856; *People v. Precup* (1978), 73 Ill.2d 7, 16, [21 Ill.Dec. 863] 382 N.E.2d 227.) However, the defendant's timely objection during the trial to the State's attempt to introduce Gilbert's prior hearsay statements was sufficient to allow the trial judge to consider the issue, thereby satisfying the purpose of the post-trial motion rule. (*People v. Moody* (1979), 75 Ill.App.3d 674, 682, [31 Ill.Dec. 441] 394 N.E.2d 643; *People v. Norris* (1972)), 8 Ill.App.3d 931, 935, 291 N.E.2d 184.) Therefore, this issue is preserved for appeal.

*People v. White*, No. 86–1612, slip op. at 7 (Ill.App. 1st Dist. April 25, 1988) (*"White I"*).

The appellate court then reviewed the State's attempt to elicit testimony, over defense objection,[1] regarding a conversation Gilbert allegedly had with defendant White. According to the appellate court, Gilbert's prior inconsistent statements were read into the record twice, once during the direct examination of Gilbert and once during the direct examination of a police detective (Detective McGuire). The appellate court opinion summarized Gilbert's and McGuire's testimony as follows:

Joan Gilbert testified that on January 31, 1981, she was the defendant's girlfriend. However, she did not see the defendant on that date, but did see him on February 1, 1981, at the police station when police officers came to her home at 6656 South Stewart in Chicago and took her to the police station for questioning. Gilbert denied making any statements to any police officers or the assistant State's Attorney at the police station. Gilbert also testified that she was interviewed by an assistant State's Attorney

and a policeman about a month before the trial. They read to her statements in a police report that she allegedly made in 1981, and she told them that she had not made those statements. She stated that on her way to the police station the only thing she said to the police was that she 'wasn't aware of anything that had happened.' The State attempted to impeach Gilbert with evidence of her prior statements to the police.

She further testified that an assistant State's Attorney told her that she could be charged with perjury if she did not admit to making the 1981 statement.

Detective McGuire testified that he was present when the assistant State's Attorney interviewed Gilbert and she was not threatened with a perjury charge. McGuire further testified that Gilbert made the statements to him regarding the offense that she denied making during her testimony. However, he did testify that he was aware that Gilbert had denied making the prior statements before trial.

*White I*, at 5–6.

The court then quoted the prosecutor's questioning of Gilbert regarding her alleged prior inconsistent statements:

Q: Do you recall telling the detectives that Derrick White and Drake Hudsell came to the apartment about 1:30 in the morning on January 31, 1981?

A: No, I did not.

Q: Did you tell the police officers that when Derrick and Binkie arrived at your home, Derrick gave you a gun and told you that he had done something wrong?

A: No.

Q: You did not say that?

A: No, I didn't.

Q: Did you tell the police officers at your house, at that time, that Detective

---

1. This court was not presented with a transcript of the relevant portions of the trial. In its Answer to the Petition for a Writ of Habeas Corpus (prior to White's amending his petition), the State declared that it had requested but had not yet received the trial record from the Circuit Court of Cook County. *See* Answer to Petition

¶ 3. Pursuant to Rule 5 of the Rules Governing Section 2254 Cases, the State filed copies of the briefs filed with the Illinois appellate and Supreme courts as well as the appellate opinions. Throughout this opinion, this court relies on the characterizations of the trial provided by the Illinois appellate court in its *White I* opinion.

Flood and McGuire, that Derrick told you to keep the gun, that he had to leave.

A: No.

Q: Did you tell the police officers that Derrick left at the time with Drake Hudsell and he returned about 10:30 or—strike that—about 5:30 the next morning?

A: No.

Q: Did you also tell the police officers that when Derrick White came back about 5:30 in the morning, he remained at your apartment until about 10:30 in the morning?

A: No.

Q: Did you tell the police officers, Detective Flood and McGuire, that while at the apartment at this time, the defendant, Derrick White, told you that he had shot someone and that she had the gun that was used.

A: No.

Q: Did you tell police officers that Derrick then left the apartment and he never returned?

A: No.

*Id.* at 7–8.

The appellate court then ruled that the trial court committed reversible error in allowing the State to question Gilbert regarding her alleged prior inconsistent statements and also in questioning McGuire regarding them. Citing *People v. Johnson*, 333 Ill. 469, 165 N.E. 235 (1929), the court stated that the prosecution may not introduce otherwise inadmissible evidence under the guise of impeachment. Acknowledging that prior inconsistent statements may be used for impeachment, the court nonetheless insisted that the direct examination was a misuse of impeachment and that the State's purpose was actually to put before the jury inadmissible hearsay.

The appellate court also noted that the rule against the abuse of prior inconsistent statements is the same in the federal courts. It quoted the Seventh Circuit's statement on the matter:

It would be an abuse of [Rule 607], in a criminal case, for the prosecution to call a witness that it knew would not give it useful evidence, just so it could introduce hearsay evidence against the defendant in the hope that the jury would miss the subtle distinction between impeachment and substantive evidence—or, if it didn't miss it, would ignore it. The purpose would not be to impeach the witness but to put in hearsay as substantive evidence against the defendant, which Rule 607 does not contemplate or authorize. We thus agree that 'impeachment by prior inconsistent statement may not be permitted where employed as a mere subterfuge to get before the jury evidence not otherwise admissible.'

*United States v. Webster*, 734 F.2d 1191, 1192 (7th Cir.1984), quoting *United States v. Morlang*, 531 F.2d 183, 190 (4th Cir. 1975). The appellate court concluded that "the State knew that Joan Gilbert would deny making [the] prior inconsistent statements for at least a month before the trial." *White I* at 10. It pointed out that Gilbert testified that she told the assistant State's attorney as well as "some detectives" that she did not make the prior statements and Detective McGuire confirmed during his testimony that before trial Gilbert denied ever making the prior statements attributed to her. *Id.* Accordingly, the court ruled that the State's effort to "impeach" Gilbert was in actuality a ruse to sneak in inadmissible hearsay evidence relating to White's culpability.

The Illinois appellate court also ruled that the trial court failed to instruct the jury not to consider Gilbert's alleged prior statements for their substantive content. The trial court gave IPI Criminal Instruction No. 3.11 at the end of the trial. The instruction provided that:

The believability of a witness may be challenged by evidence that on some former occasion he made a statement that was not consistent with his testimony in this case. Evidence of this kind may be considered by you only for the purpose of deciding the weight to be given the testimony you heard from the witness in the courtroom.

The court found that giving Instruction No. 3.11 at the end of the trial was not a

sufficient safeguard to ensure that the Gilbert's alleged prior statements would not be considered for their substantive content.

Derrick White's victory proved to be short-lived, however. The State petitioned the appellate court for a rehearing which the appellate court granted. In its petition, the State argued that under *People v. Enoch*, 122 Ill.2d 176, 119 Ill.Dec. 265, 522 N.E.2d 1124 (1988), White had waived his argument about the State's misuse of Gilbert's prior statements because he failed to include the issue in his written motion for a new trial. In *Enoch* (decided 36 days after *White I*), the Illinois Supreme Court restated Illinois' rule that to preserve an issue for appeal, a criminal defendant must have raised the issue *both* at trial *and* in a written post-trial motion. Because White's written post-trial motion did not specifically raise the issue of the government's misuse of Gilbert's prior inconsistent statements, after reconsideration, the Illinois appellate court ruled that White had waived the argument. *See People v. White*, 181 Ill. App.3d 798, 130 Ill.Dec. 846, 537 N.E.2d 1315 (1st Dist.1989) ("*White II*").

The appellate court, on rehearing, also reversed itself with respect to the adequacy of the jury instruction relating to prior inconsistent statements. Without great discussion, the court ruled after reconsideration that Criminal Instruction 3.11 was in fact sufficient. It wrote:

> Our supreme court has held that the giving of IPI Criminal 2d No. 3.11 is 'sufficient to guide the jury in its deliberation and provide an adequate safeguard that the jury would not give substantive character to the impeachment testimony.' (*People v. Bradford* (1985), 106 Ill.2d 492, 502 [88 Ill.Dec. 615] 478 N.E.2d 1341; *People v. Spicer* (1979), 79 Ill.2d 173, 179 [37 Ill.Dec. 279] 402 N.E.2d 169, *cert. denied* (1980), 446 U.S. 940, 64 L.Ed.2d 794, 100 S.Ct. 2162.) Therefore, the defendant's contention is without merit.

*Id.* at 805, 130 Ill.Dec. 846, 537 N.E.2d 1315.

The court then reached White's other two arguments, that the prosecutor made an improper reference in his closing about White's failure to testify and that the evidence was insufficient to convict. The appellate court ruled against White on both issues and reinstated the conviction. *See id.*

White petitioned for leave to appeal to the Illinois Supreme Court. In his petition, White argued that he had not waived the argument relating to the State's misuse of Gilbert's alleged prior statements and that his conviction should be overturned for the reasons originally stated in *White I*. The Illinois Supreme Court denied White's petition for leave to appeal.

Derrick White subsequently filed a petition for habeas corpus relief, subsequently amended, pursuant to 28 U.S.C. § 2254. White raises five arguments in his amended petition. First, he argues that he was denied due process of law when the prosecutor called a witness just so that it could introduce prior hearsay statements under the pretense of impeachment but for the true purpose of inducing the jury to consider the statements for their substantive content. Second, he argues that Illinois' rule on preserving issues for appeal is too strict and violates due process. Third, White argues that he was denied due process by the alleged retroactive application of the rules laid out in *Enoch* concerning preservation of issues for appeal. Fourth, he contends that he was denied due process because the prosecutor allegedly made an improper allusion to his failure to testify. Fifth, and finally, White argues that he was unconstitutionally convicted because he was not proven guilty of murder beyond a reasonable doubt.

### Discussion

#### A. Misuse of Prior Inconsistent Statements

 The State contends that White has procedurally defaulted on the argument that the allegedly substantive use of Gilbert's prior inconsistent statements violated the due process clause. Indeed, it is well settled that failure to preserve an issue for direct appeal waives that issue for purposes of habeas corpus review under

§ 2254. *See United States ex rel. Holleman v. Duckworth,* 770 F.2d 690 (1985). In this case, the Illinois appellate court decided after reconsidering the matter that White failed to preserve the issue for appeal. *See White II.* This court is bound to abide by the ruling in *White II* that the petitioner failed to preserve for appeal the issue of misuse of Gilbert's prior statements. *See Buelow v. Dickey,* 847 F.2d 420, 425 (7th Cir.1988) ("When considering a habeas petition, . . . a federal court must respect a state court's finding of waiver or procedural default under its own laws"), *cert. denied* 489 U.S. 1032, 109 S.Ct. 1168, 103 L.Ed.2d 227.

▮ In order to overcome his default, White must demonstrate both cause and actual prejudice for the default. *See Nutall v. Greer,* 764 F.2d 462 (7th Cir.1985); *see also Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). White contends that he has just cause for having defaulted; he argues that the Illinois Supreme Court changed the rules on how to preserve issues for appeal in its *Enoch* opinion, an opinion issued after he had appealed his conviction.

At trial White's defense counsel made a timely objection. *See White I* at 6. After trial, White made a written motion for a new trial which he later amended. Neither the original nor the amended motion, however, specifically raised the issue of the alleged improper use of Gilbert's prior statements. In the written motions, White's defense counsel did state that he was reserving the right to raise any other issues which were not specifically set forth in the motion as he was awaiting the tran-script of the proceedings. White claims in his brief that at no time did the State object to his unilateral reservation of issues. *See* Memorandum in Support of Petitioner's Amended Petition at 2. Citing *Enoch,* the court in *White II* ruled that White's failure to specify the issue of the alleged substantive use of Gilbert's prior statements constituted a waiver of that issue for appeal.

Although it has been stated that "a reasonably unanticipated finding of procedural default may satisfy the 'cause' requirement of *Wainwright [v. Sykes],*" *Jacquin v. Stenzil,* 886 F.2d 506, 508 (2d Cir.1989), the Seventh Circuit is not so ready to find cause. In *Prihoda v. McCaughtry,* 910 F.2d 1379 (7th Cir.1990), the Seventh Circuit declared that even if a procedural default rule is not "strictly" followed by the state courts, the habeas court on review must ordinarily respect a finding of waiver if the state court relied on the procedural ground on direct appeal. *Id.* at 1384. The court in *Prihoda* held that so long as the state procedural ground relied upon is "solidly established," then the habeas court must find that procedural default bars consideration of the claim.[2]

There is no question that the procedural rule relied upon by the Illinois Appellate Court in *White II* was "solidly established" even if perhaps not "strictly followed." Ever since 1963, the rule in Illinois has been that a criminal defendant found guilty must specify the grounds on which he seeks a new trial in a written motion. *See* Ill.Rev.Stat.1983, ch. 38, ¶ 116–1. The Supreme Court of Illinois has repeatedly cited the code and has repeatedly stated the general rule that even if a timely objection was

---

**2.** In the present case, the Illinois Appellate Court dismissed White's appeal because he waived the issue of the misuse of Gilbert's prior inconsistent statements. *See White II.* The court in *White II* also ruled, alternatively, that the jury instructions were sufficient to have prevented the evidence on Gilbert's prior statements from being improperly considered for their substantive content. *See White II,* 181 Ill.App.3d, at 805, 130 Ill.Dec. 846, 537 N.E.2d 1315. Despite the alternative ruling based on the merits of the appeal, the Illinois Appellate Court "clearly and expressly" stated that the procedural bar was an independent and adequate basis for its ruling. *Harris v. Reed,* 489 U.S. 255, 263, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308; *see White II,* 181 Ill.App.3d at 803, 130 Ill.Dec. 846, 537 N.E.2d 1315 ("Accordingly, we do not find it necessary to pass upon the appropriateness of the admission of Gilbert's prior inconsistent statements into evidence"). Therefore, the fact that the *White II* court proceeded to consider the adequacy of the jury instruction does not mean that the Illinois Appellate Court did not make a ruling of waiver. *See Harris v. Reed.* By failing to argue otherwise, White apparently agrees that the finding of procedural default was an "independent and adequate" basis for the ruling in *White II.*

made at trial, failure to specify the grounds for a new trial in writing in a motion for a new trial constitutes waiver of the issue on review. *See People v. Szabo*, 113 Ill.2d 83, 93, 100 Ill.Dec. 726, 497 N.E.2d 995 (1986); *People v. Porter*, 111 Ill.2d 386, 389, 95 Ill.Dec. 465, 489 N.E.2d 1329 (1986); *People v. Pickett*, 54 Ill.2d 280, 296 N.E.2d 856 (1973). In *People v. Enoch*, 122 Ill.2d 176, 119 Ill.Dec. 265, 522 N.E.2d 1124 (1988), the Illinois Supreme Court merely restated what had been the law already: that to preserve an issue for appeal a criminal defendant must both object at trial and raise the issue in a written motion for a new trial. To the extent that *People v. Enoch* changed the law at all, the change was merely to insist that the rule on preserving issues for appeal is to be the same in both capital and non-capital cases. *Cf. People v. Caballero*, 102 Ill.2d 23, 31, 79 Ill.Dec. 625, 464 N.E.2d 223 (1984) (rules for preserving issues on appeal may be less strictly followed for capital cases).

The Illinois Supreme Court has on occasion allowed a few exceptions to Ill.Rev. Stat.1983, ch. 38, ¶ 116–1 and considered issues raised on appeal even though appellants have failed both to object and to include the issue in their written motions for a new trial. For example, in *Pickett*, the Court allowed for "plain error" review of an issue not raised in the written motion. In *People v. Caballero*, 102 Ill.2d 23, 31, 79 Ill.Dec. 625, 464 N.E.2d 223 (1984), the Illinois Supreme Court suggested that the rules on preservation of issues for appeal could be relaxed in capital cases. *But see People v. Enoch* (capital case requiring both objection at trial and written motion specifying the issue). The Illinois Supreme Court has also shown itself willing to consider significant or constitutional issues in instances in which a timely objection was made even though the matter was not included in the motion for a new trial. *See People v. Jones*, 81 Ill.2d 1, 7–9, 39 Ill.Dec. 590, 405 N.E.2d 343 (1979); *see also Enoch.*

The Court has also acknowledged one other major exception, the "general oral motion and State waiver" exception. A general oral motion to which the State does not object will preserve for review all errors properly preserved in the record even though not specified in the oral post-trial motion. *See People v. Enoch*, 122 Ill.2d 176, 188, 119 Ill.Dec. 265, 522 N.E.2d 1124 (1988); *People v. Pearson*, 88 Ill.2d 210, 58 Ill.Dec. 739, 430 N.E.2d 990 (1981); *People v. Denby*, 102 Ill.App.3d 1141, 58 Ill.Dec. 475, 430 N.E.2d 507 (5th Dist.1981); *People v. Robinson*, 92 Ill.App.3d 972, 48 Ill.Dec. 520, 416 N.E.2d 793 (5th Cir.1981). Petitioner argues that his appeal falls under this exception and that therefore the appellate court should not have ruled that he waived his argument. *See* Memorandum in Support of Petitioner's Amended Petition at 5–6. Indeed, the Illinois Appellate Court relied on a "general oral motion and State waiver case," *People v. Norris*, 8 Ill.App.3d 931, 291 N.E.2d 184 (1st Dist.1972), in initially ruling in *White I* that White had not lost his issue for appeal.

As petitioner points out, it is also true that from time to time the Illinois intermediate courts of appeal have been somewhat lax in enforcing the rule that both a timely objection at trial and a specific motion for a new trial are necessary. For example, in *People v. Washington*, 85 Ill.App.3d 522, 40 Ill.Dec. 954, 407 N.E.2d 185 (3rd Dist. 1980), the court wrote that the general rule that failure to include an issue in a post-trial motion waives that issue for purposes of appeal is relaxed where the issue had been brought to the trial court's attention otherwise, had been ruled on by the trial court, and where the defendant would be prejudiced if his contention of error is well-founded. The court then considered an evidentiary issue which the defendant failed to mention in his post-trial motion, but which was objected to at trial. Similarly, in *People v. Jones*, 173 Ill.App.3d 147, 122 Ill.Dec. 943, 527 N.E.2d 441 (1st Dist. 1988), a case decided after *Enoch*, the court ruled that an issue not raised in a post-trial motion was preserved for appeal because it was "clearly presented" to the trial court. In *Jones*, the issue was whether the trial court had erred by not striking a prosecutor's unsworn statements of fact that he made during the closing. A timely objection had been made at trial but the

defendant failed to raise it in his post-trial motion. *White I* partly relied on a third case, *People v. Moody,* 75 Ill.App.3d 674, 31 Ill.Dec. 441, 394 N.E.2d 643 (1st Dist. 1979), in which the appellate court ruled that merely objecting at trial could be sufficient to preserve an issue for appeal.

Despite the willingness of certain appellate courts to circumvent the dictates of the Illinois Supreme Court and the existence of certain exceptions to the general rule, Illinois courts, even before *Enoch,* could not be said to have applied the requirement that motions for a new trial specify the grounds thereof in an "infrequent[ ], unexpected[ ] or freakish[ ]" manner. *Prihoda v. McCaughtry,* 910 F.2d 1379, 1383 (7th Cir.1990). The rule that a criminal defendant must make a timely objection at trial and then specify the issue in a written motion for a new trial was "solidly established" in 1986, at the time of White's trial. Although the opinion in *White II* cited the recently decided *Enoch* case, it could have cited a host of other cases decided earlier by the Illinois Supreme Court.

Having concluded that White lacked cause for his procedural default, the court need not reach the issue of whether White was prejudiced by his default. Indeed, this court is not in a position to decide whether or not he was prejudiced as it was not provided a copy of the trial transcript. Nonetheless, the court takes note of White's argument that "obviously" there was prejudice because in *White I,* he obtained a reversal which was taken away from him in *White II* when the court ruled that he had waived his argument. Memorandum in Support of Petitioner's Amended Petition at 7. The issue of prejudice is far from obvious, however. The Illinois Appel-

late Court has termed the evidence against White "overwhelming." *See White II,* 181 Ill.App.3d at 804, 130 Ill.Dec. 846, 537 N.E.2d 1315.

Even were this court to assume *arguendo* that *Enoch* announced a new rule on the preservation of issues for appeal and that the retroactive change in the rules provides White with "cause and prejudice" to excuse his default, the court would still decide that the due process issue was waived. White can not present his constitutional claim here because his arguments before the Illinois appellate courts have always been based solely on state evidentiary law and not on constitutional principles.

In his briefs to the Illinois appellate court and to the Illinois Supreme Court, White never mentioned the constitutional ramifications of the evidentiary error on which he based his appeal. White argued exclusively that a prosecutor's purposeful effort to introduce hearsay under the guise of impeachment with prior inconsistent statements is a violation of Illinois evidence law.[3] The two opinions of the Illinois appellate court in turn directed themselves exclusively to the state law aspects of the issue and contained no discussion of the federal constitution. *See White I; White II.*

Despite his failure to have mentioned or even to have alluded to the constitution in his briefs on direct appeal, White does in fact have a colorable claim that his due process rights were infringed if in fact Gilbert's prior inconsistent statements were put to the jury for their substantive content.[4] Supreme Court and Seventh Circuit case law establish that in certain circumstances the substantive use of a wit-

---

**3.** There is no question that, under Illinois law, prior inconsistent statements may be used to attack the credibility of a witness but may not be used to establish the truth of the content of the statements. *See People v. Bradford,* 106 Ill.2d 492, 88 Ill.Dec. 615, 478 N.E.2d 1341 (1985); *White I.* The Illinois Supreme Court has "repeatedly disapproved prosecutorial efforts to impart substantive character to prior inconsistent statements under the guise of impeachment." *People v. Bryant,* 94 Ill.2d 514, 522, 69 Ill.Dec. 84, 447 N.E.2d 301 (1983).

**4.** Whether Gilbert's prior inconsistent statements were put before the jury as substantive evidence would require a determination as to whether the IPI Criminal Instruction 3.11 was adequate to limit the jury's consideration of those statements to their impeachment value. Such a determination would necessitate a review of the trial transcript which, as indicated above, the court was not provided.

ness's prior inconsistent statements violates due process.

The court notes with regret, however, that in his amended petition and the supporting briefs, White cited *no authority whatsoever* to support his claim that the State's use of Gilbert's statements ran afoul of the federal constitution. White, of course, is not entitled to habeas relief unless he can raise a violation of federal law. *See* 28 U.S.C. § 2254(a). *See also Guzzardo v. Bengston,* 643 F.2d 1300, 1302 ("Errors in State trials arising out of the admission of hearsay statements are not grounds for Federal habeas relief absent a showing of deprivation of a specific due process right"), *cert. denied* 452 U.S. 941, 101 S.Ct. 3085, 69 L.Ed.2d 955 (1981).

It was in fact the State which cited the case of *California v. Green,* 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970), in which the Supreme Court indicated that the substantive use of a witness's prior inconsistent statements can present a due process problem. In a footnote, the Court wrote that it "may agree that considerations of due process ... might prevent convictions where a reliable evidentiary basis is totally lacking." *Id.,* at 163–164 n. 15, 90 S.Ct. at 1937 n. 15.

Subsequently, the Seventh Circuit has explained when an evidentiary basis is to be considered so totally lacking that due process would be violated by the substantive use of prior inconsistent statements. It wrote:

> In *United States v. Leslie,* 542 F.2d 285 (5th Cir.1976), the Fifth Circuit established guidelines to determine whether substantive use of a prior inconsistent statement would comport with due process. The court held that a prior inconsistent statement could be constitutionally admitted as substantive evidence where: (1) the declarant was available for cross-examination; (2) the statement was made shortly after the events related and was transcribed promptly; (3) the declarant knowingly and voluntarily waived the right to remain silent; (4) the declarant admitted making the statement; and (5) there was some corrobora-

tion of the statement's reliability. *Id.* at 290–91. We believe that the application of these guidelines will safeguard due process by 'prevent[ing] conviction where a reliable evidentiary basis is totally lacking.' *Green,* 399 U.S. at 163 n. 15, 90 S.Ct. at 1937 n. 15. Therefore we adopt these guidelines and apply them to [the witness's] prior inconsistent statement to determine whether the admission of that statement violated petitioner Vogel's due process rights.

*Vogel v. Percy,* 691 F.2d 843, 846–47 (7th Cir.1982).

The use of Gilbert's prior statements did not conform with the *Leslie* guidelines adopted by the Seventh Circuit in *Vogel.* Substantive use of Gilbert's alleged prior statement would therefore have violated due process. The fourth guideline clearly has not been met; Gilbert denies having made the 1981 statement to the police. *See White I.* In addition, the second guideline has apparently not been satisfied as the record before this court is empty of any sign that Gilbert's alleged statement was ever transcribed.

As noted above, however, before this court can consider the merits of an argument on habeas review, the court must make sure that the issue has been "fairly presented" to the state appellate courts. The respondent insists that even if "cause and prejudice" could excuse White's failure to list all his grounds for appeal in his written motion for a new trial, he "could not present [the due process argument] here because his argument has always been based on state evidentiary law and not on constitutional principles." Respondent's Brief at 14. The Supreme Court has declared that although a habeas petitioner need not have cited " 'book and verse on the federal constitution,' ... the substance of a federal habeas claim must first be presented to the state courts." *Picard v. Connor,* 404 U.S. 270, 278, 92 S.Ct. 509, 513, 30 L.Ed.2d 438 (1971), quoting *Daugharty v. Gladden,* 257 F.2d 750, 758 (9th Cir.1958). In *United States ex rel. Sullivan v. Fairman,* 731 F.2d 450 (7th Cir. 1984), the Seventh Circuit elaborated upon

*Picard* and carefully addressed the question of "whether and under what circumstances a state prisoner who has fully presented to the state court the substance of a claim that forms the basis of the constitutional deprivation alleged in the prisoner's habeas petition, but has not done so in explicit constitutional terms, may be held to have sufficiently apprised the state court of the potential existence of an error of constitutional dimension." *Id.* at 453.

According to *Sullivan*, "the claim must have been presented in such a way as to fairly alert the state court to any applicable constitutional ground for the claim." *Id.* The court in *Sullivan* acknowledged that there may be situations in which the constitutional ramifications of an argument are self-evident and therefore declined to adopt a "per se rule that any state court appeal that fails to use the magic words 'due process' fails to adequately alert the state court to the constitutional ramifications of the alleged trial court error." *Id.* at 454. The court then provided four factors to consider in deciding whether the state appeal "alerted" the state appellate courts to the constitutional issues. Those factors are whether the argument presented to the state court:

> '(a) rel[ies] on pertinent federal cases employing constitutional analysis; (b) rel[ies] on state cases employing constitutional analysis in like fact situations, (c) assert[s] the claim in terms so particular as to call to mind a specific right protected by the Constitution, ... [or] (d) allege[es] a pattern of facts that is well within the mainstream of constitutional litigation.'

*Id.* at 454 (footnote deleted), quoting *Daye v. Attorney General of New York*, 696 F.2d 186, 194 (2d Cir.1982) (en banc).

Where *"none* of [the four *Sullivan* ] factors is present, and there is no indication that the state court has considered any potential implications, then," the Seventh Circuit wrote, "it is fair to conclude that the state court has not been properly presented with the petitioner's constitutional claims." *Id.* at 454 n. 9 (emphasis original). *Sullivan* also states that even if one of the four factors is present, the habeas petitioner has not necessarily met his burden of showing that the state courts had a fair opportunity to consider the petitioner's constitutional claim. *Sullivan*, 731 F.2d, at 454 n. 9.

In this case, none of the four *Sullivan* factors is present. In his appellate briefs, White relied on no federal or state cases employing constitutional analysis. The briefs also failed to assert the claim in terms so particular as to call to mind the due process clause. *See United States v. Baker*, 722 F.2d 343, 347 n. 7 (7th Cir.1983) (appellant, arguing that substantive use of prior inconsistent statements of a witness violated Confrontation Clause, failed to raise due process issue and Seventh Circuit declined to consider the issue). Finally, White has not alleged facts well within the mainstream of constitutional litigation, such as arguing that his conviction was based on evidence obtained in a manner which "shocks the conscience." *Id.* at 454 n. 8 (offering that example).

Like the petitioner in *Sullivan*, White did not present his state court argument in the context of a federal constitutional claim, he never used the term "due process," and the opinion of the Illinois Appellate Court indicates that it discerned no due process implications. *Id.* at 454. Despite this court's reluctance to deny a habeas petitioner an opportunity to advance a seemingly colorable due process argument, there is no escaping the conclusion that the state appellate court was not "alerted" to possible due process ramifications. *Id.* at 453. *See United States ex rel. Nance v. Fairman*, 707 F.2d 936 (7th Cir.1983) (argument on direct appeal to state appellate court that exclusion of prior inconsistent statement violated Illinois evidence law did not fairly present Confrontation Clause argument based on same facts).

Language from other Seventh Circuit cases may suggest, moreover, that a state prisoner must actually have made an explicit constitutional argument on direct appeal in order to permit him to make the argument on habeas review. The Seventh Circuit has stated:

'A habeas petitioner has "fairly presented" ' a claim to a state court if he has clearly informed the state court of the factual basis of the claim and *has argued to the state court that those facts constituted a violation of the petitioner's constitutional rights.'

*Cruz v. Warden of Dwight Correctional Center,* 907 F.2d 665, 667 (7th Cir.1990) (emphasis supplied), quoting *Varnell v. Young,* 839 F.2d 1245, 1248 (7th Cir.1988), quoting *Toney v. Franzen,* 687 F.2d 1016, 1021 (7th Cir.1982). *Cruz* is unclear whether a habeas petitioner has fairly presented a claim to a state court if or *only if* he has first argued to the state court that the facts behind his claim amount to a violation of constitutional rights. If *Cruz* means that a habeas petitioner must actually argue to the state court that his constitutional rights have been violated, then it imposes an even stricter test than *Sullivan* on the preservation of issues for habeas appeal. In light of *Picard*'s statement that a habeas petitioner need not cite "book and verse" on the federal constitution, perhaps *Cruz* is best read as stating a sufficient, though not necessary, condition for preserving an issue for habeas review.

A comparison of the state law and constitutional claims confirms the result mandated by application of the *Sullivan* factors, *i.e.,* that the state court was not "alerted" to the constitutional ramifications of the use of Gilbert's prior statements. In this case, the questions raised by the state law claim are almost but not quite the same as those raised by the due process claim. To decide both the state law evidentiary issue and the due process issue, a court would first have to determine whether a serious danger existed that Gilbert's prior inconsistent statements were considered for their substantive content in view of the judge's jury instructions and in view of what actually transpired at trial.

Unlike a court deciding the due process issue, however, a court deciding the state law issue would then focus on the intent of the prosecutor. The court would have to reach a conclusion as to whether the prosecutor knew beforehand that the witness would deny making the prior statements but nonetheless asked the witness certain questions just so that the prior statements could be put before the jury under the "guise" of impeachment. In short, the court deciding the state law issue is in the position of determining whether the prosecutor did something sneaky. *See White I; People v. Johnson,* 333 Ill. 469, 476, 165 N.E. 235 (1929); *see also United States v. Webster,* 734 F.2d 1191 (7th Cir.1984).

By contrast, a court deciding the due process question would not inquire as to what the prosecutor knew beforehand or what his or her reasons were for asking the witness the questions that he or she did. Such a court would merely seek to determine whether there was a reliable evidentiary foundation to permit the substantive use of the prior inconsistent statements. As discussed above, in the Seventh Circuit a court would have to determine whether the five standards announced in *Vogel v. Percy,* 691 F.2d 843 (7th Cir.1982), were met.

Determining whether the five *Vogel* standards have been met is a different inquiry from whether the prosecutor abused the rule permitting impeachment by prior inconsistent statements. That is not to say that there is no overlap in the inquiry. For example, a witness's denial of having made the prior statements ascribed to her may be relevant in ascertaining whether the prosecutor knew in advance that she would deny the truth of the prior statements. Whether or not the witness denies making the prior statements is also the fourth *Vogel* standard. A witness's denying having made the prior statements, though determinative of the due process issue, is not at all dispositive of the state law question, however. The prosecutor may have misused his or her opportunity to impeach even if the witness agrees to having made the prior statements; the witness need not have denied making the prior statements in order for the prosecutor's impeachment to be improper. The witness need only deny the truth contained in the earlier statements. Conversely, the prosecutor may not have violated state law even if the witness denies having made the prior

statements, as long as the prosecutor is genuinely surprised by the denial or if he or she actually questioned the witness for the purpose of impeachment.

The similarities in the necessary factual inquiries and legal theories between what was included in the state court appeal and the present habeas petition are simply not strong enough for this court to conclude that the Illinois appellate court was "alerted" to the due process issue by White's attempted state court appeal. The state court in this case was far less "alerted" to the federal issues than the state appellate court in *United States ex. rel. Holleman v. Duckworth,* 770 F.2d 690 (7th Cir.1985). In *Holleman,* the petitioner was a prisoner who was transferred from a prison in Indiana to Illinois to stand trial. He was found guilty in the Illinois trial. In his direct appeal of the conviction, Holleman argued that post-transfer delays in holding his trial violated the Illinois Speedy Trial Act and that pre-transfer delays in holding his trial violated the Interstate Agreement on Detainers ("IAD") (Ill.Rev.Stat. ch. 38, ¶ 1003–8–9 (1983)). In his habeas appeal, he argued that post-transfer delays violated the IAD.

The Seventh Circuit reversed the district court which had found that his direct appeal gave the Illinois appeals court "elaborate notice that Holleman had a valid IAD claim." *Id.* at 692. Despite substantial similarities in the legal theories and complete overlap in necessary facts, the Seventh Circuit ruled that the state court had not been alerted to the possibility that Holleman's post-transfer delay violated the IAD. Indeed, as the Supreme Court has stated "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." *Anderson v. Harless,* 459 U.S. 4, 6, 103 S.Ct. 276, 277, 74 L.Ed.2d 3 (1982) (per curiam) (citations omitted).

White has offered no excuse providing him "cause and prejudice" for his failure to raise the constitutional implications of the state evidentiary issue he brought on appeal. Even if the court could find cause and prejudice to excuse White's failure to have drafted a complete written motion for a new trial, such a finding would not excuse him for omitting the due process argument from his appeal. *See United States ex. rel. Sullivan v. Fairman,* 731 F.2d 450 (7th Cir.1984).

### White's Other Arguments Have Been Defaulted

█ In his petition for leave to appeal to the Illinois Supreme Court, White presented only the argument that the use of a witness merely to impeach her was reversible error. Under Illinois law, a party seeking to appeal to the Illinois Supreme Court must include in his petition for leave to appeal "a statement of the points relied upon for reversal of the judgment of the Appellate Court." Supreme Court Rule 315(b)(3), Ill.Rev.Stat., ch. 110A, ¶ 315(b)(3). Failure to include issues in the petition for leave to appeal operates as a waiver of those issues. *See People v. Anderson,* 112 Ill.2d 39, 43–44, 96 Ill.Dec. 58, 490 N.E.2d 1263 (1986). Therefore, White's failure to raise the other issues in his petition to the Illinois Supreme Court defaults them for purposes of review under § 2254, *see Nutall v. Greer,* 764 F.2d 462, 465 (7th Cir. 1985), unless he can demonstrate both cause and prejudice for the default. *See Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

█ White could have argued in his petition to the state supreme court that the retroactive application of the rule announced in *Enoch* violated due process. He failed to make that argument, however, and it is therefore procedurally defaulted. This court emphasizes that in the previous section it considered whether *Enoch* effected a significant enough change in the law to give White "cause" for failing to preserve his due process argument based on the arguably substantive use of Gilbert's prior inconsistent statements. *See Vogel v. Percy,* 691 F.2d 843 (7th Cir.1982). Whether *Enoch* 's modification of the law excused White's default of his *Vogel v. Percy* argument is an entirely different question from whether the appellate court's decision to

follow *Enoch* amounted to an unconstitutional retroactive application of a change in the law.

■ White also argues that Illinois' rule for preservation of issues on appeal violated due process. He correctly points out that under the federal constitution, direct appeal of a criminal conviction is guaranteed as a matter of right. *See Griffin v. Illinois*, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956); *Evitts v. Lucey*, 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). White contends that by requiring criminal defendants both to make a timely objection at trial and include the objection in a written post-trial motion for a new trial, Illinois has unconstitutionally burdened a criminal defendant's right to direct appeal. Again, this issue was never raised by White until his petition for habeas corpus. He did not make the argument to the Illinois appellate court on rehearing or in his petition for leave to appeal to the Illinois Supreme Court. He has therefore defaulted on the argument and this court can not consider it.

■ White's other two arguments, that the evidence was insufficient to convict and that the prosecutor improperly alluded to White's failure to testify are clearly waived. Although properly preserved in his direct appeal to the Illinois appellate court, those arguments were abandoned in White's appeal to the Illinois Supreme Court. He has offered no "cause and prejudice" arguments to excuse their omission. Those two issues are therefore procedurally defaulted.

## Conclusion

Respondent's motion to deny the petition is granted.